STILLWELL THEATRE, INC., Respondent, *v.* SAM KAPLAN, as President of the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS UNION, Appellant.

ROSEKAY AMUSEMENT CORPORATION, Respondent, *v.* SAM KAPLAN, as President of the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS UNION, Appellant.

WINDSOR CIRCUIT CORPORATION, Respondent, *v.* SAM KAPLAN, as President of the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS UNION, Appellant.

(Argued June 17, 1932; decided July 19, 1932.)

*Charles H. Kelby, Maurice Deiches* and *Abraham K. Kaufman* for appellant. The means employed by defendant in picketing plaintiffs' theatres were lawful. The picketing was peaceful and was not accompanied by any acts of violence, trespass or intimidation. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin,* 245 N. Y. 260; *Nann* v. *Raimist,* 255 N. Y. 307.) Defendant's purpose in picketing plaintiffs' theatres was to preserve and maintain the wage scale and working conditions which it had heretofore obtained for its members. Such a purpose is admittedly lawful and excused any injury to the plaintiffs. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin,* 245 N. Y. 260; *Nann* v. *Raimist,* 255 N. Y. 307; *Steinkritz Amusement Corp.* v. *Kaplan,* 257 N. Y. 294.) The contracts between the plaintiffs and the Empire State organization are not entitled to equitable protection. (*Herzog* v. *Klein,* 131 Misc. Rep. 816; *Wilner* v. *Bless,* 243 N. Y. 544.)

*William F. McNulty, Harold R. Medina* and *Joseph A. Teperson* for respondents. In view of the valid, binding and subsisting contracts of employment which existed between the plaintiffs and the Empire State Union, the picketing conducted by the defendant was clearly illegal, and was, therefore, properly restrained. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin,* 245 N. Y. 260; *Interborough R. T. Co.* v. *Lavin,* 247 N. Y. 65; *Nann* v. *Raimist,* 255 N. Y. 307; *Lumley* v. *Wagner,* 1 DeG., M. & G. 604; *Goldman* v. *Cohen,* 222 App. Div. 631; *Schlesinger* v. *Quinto,* 201 App. Div. 487; *Roosevelt Amusement Corp.* v. *Empire State Motion Picture Operators Union, Inc.,* 231 App. Div. 872; *Unity Amusement Co.* v. *Empire State Motion Picture Operators Union, Inc.,* 231 App. Div. 873; *Ribner* v. *Racso Butter & Egg Co.,* 135 Misc. Rep. 616.) Under the valid, binding and subsisting contracts

of employment between the plaintiffs and the Empire State Union, the parties both acquired substantial property rights which the law will not permit third parties who have full and complete knowledge of the existence of these contracts, to impair or destroy. (*Hornstein* v. *Podwitz*, 254 N. Y. 443; *Lamb* v. *Cheyney & Son*, 227 N. Y. 418; *Auburn Draying Co.* v. *Wardell*, 227 N. Y. 1; *Posner Co.* v. *Jackson*, 223 N. Y. 325; *Altman* v. *Schlesinger*, 204 App. Div. 513; *Schlesinger* v. *Quinto*, 201 App. Div. 487; *Piermont* v. *Schlesinger*, 196 App. Div. 658; *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229; *Nann* v. *Raimist*, 255 N. Y. 307; *Interborough R. T. Co.* v. *Lavin*, 247 N. Y. 65; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *Wilner* v. *Bless*, 243 N. Y. 544; *Bossert* v. *Dhuy*, 221 N. Y. 342; *Roosevelt Amusement Corp.* v. *Empire State Motion Picture Operators Union, Inc.*, 231 App. Div. 872; *Unity Amusement Co.* v. *Empire State Motion Picture Operators Union, Inc.*, 231 App. Div. 873; *Carnation Photoplay Co.* v. *Basson*, 216 App. Div. 769; *Herzog* v. *Cline*, 131 Misc. Rep. 816; *Best Service Wet Wash Laundry Co.* v. *Dickson*, 121 Misc. Rep. 416; *Stuyvesant L. & B. Corp.* v. *Reiner*, 110 Misc. Rep. 357; 192 App. Div. 951.)

POUND, Ch. J. These are labor cases in which injunctions have been granted at the suit of proprietors of moving picture theatres, enjoining defendant during the existence of contracts between the Empire State Motion Picture Operators Union, Inc., and each of the respective plaintiffs from doing any act or acts calculated to induce or cause a breach of such contracts; from picketing and patrolling the streets in front of or near the respective theatres, and from committing any act or acts which are calculated to or apt to harm, harass or embarrass the respective plaintiffs in the conduct of their business, and which are calculated to cause persons desiring to enter the theatres to refrain from so doing; from exhibiting any sign or signs and distributing any notices in front of or

near said theatres; from suggesting to any person or persons the boycotting of plaintiffs' business; from interfering in any manner above set forth or in any other manner or by any other means with the business, custom or trade of the plaintiffs, or making any false statements respecting the plaintiffs or the plaintiffs' business; from accosting, coercing, intimidating or in any manner interfering with persons employed by the plaintiffs or seeking to enter their employ, from entering or continuing in such employment, or doing any other illegal act in reference thereto.

The word " defendant," as hereinafter used, refers to labor union Local 306.

The real controversy is between Local 306 of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators Union of the United States and Canada, affiliated with the American Federation of Labor, and a member of the State Federation of Labor and of the Central Trades and Labor Council of Greater New York, and the Empire State Motion Picture Operators' Union, Inc., which is not affiliated with those organizations nor with any other labor union or body. Each plaintiff made a contract with the latter union whereby plaintiff is obliged to employ none other than members of that union as motion picture operators at such plaintiffs' theatre, which contract ran from September 1, 1930, to August 31, 1931. Defendant picketed plaintiffs' theatres with a sign which read: " Owners of this theatre refuse to employ members of Motion Picture Operators Union Local 306, affiliated with the American Federation of Labor." The picketing was peaceful; not accompanied by any acts of violence, trespass or intimidation and the sign truly stated the fact. Unquestionably defendant in picketing these three theatres was actuated by a desire to improve labor conditions as to wages, hours, number of employees and conditions of work, although incidental disadvantage to the employer

might result. " Resulting injury [from lawful picketing] is incidental and must be endured." (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, 263.)

While the trial court made findings in all three actions that a sign printed in Jewish characters and carried by the pickets was misleading in that it conveyed the idea that union labor was not employed on the premises and also that the purpose of the picketing was in part to destroy plaintiff's business, the judgment was based solely on the ground that the picketing was illegal because its purpose was to induce or cause a breach of the contract between the plaintiffs respectively and the rival union. The Appellate Division, unanimously affirming the judgment, rested its decision on the same ground. It said: " The evidence amply justified the finding that the Empire State Motion Picture Operators Union, Inc., is a *bona fide* labor union; that there were valid, binding and subsisting contracts of employment for definite periods of time between the plaintiffs and that union at the time the defendant conducted its picketing of the theatres of the plaintiffs, and that this picketing was conducted with knowledge on the part of the defendant of the existence of such contracts. Such orderly picketing with truthful placards was wrongful, although the means employed were otherwise lawful, because such acts were indulged in to attain a wrongful and, therefore, an unlawful purpose, to wit, the breach of contracts of employment for fixed and definite periods of time." (235 App. Div. 738.)

The Court of Appeals has for many years been disposed to leave the parties to peaceful labor disputes unmolested when economic rather than legal questions were involved. The employer, if threatened in his business life by the violence of the unions or by other wrongful acts might have the aid of the court to preserve himself from damage threatened by recourse to unlawful means, but the right of the workmen to organize to better their condition has been fully recognized. The fact that such action may result in incidental injury to the employer

does not in itself constitute a justification for issuing an injunction against such acts. The interests of capital .and labor are at times inimical and the courts may not decide controversies between the parties so long as neither resorts to violence, deceit or misrepresentation to bring about desired results. ( *National Protective Assn.* v. *Cumming,* 170 N. Y. 315; *Paine Lumber Co.* v. *Neal,* 244 U. S. 459, 471; *Bossert* v. *Dhuy,* 221 N. Y. 342.) Acts must be legal but they may be legal or illegal according to circumstances.

The case of *Hitchman Coal & Coke Co.* v. *Mitchell* (245 U. S. 229) has often been cited as authority for the proposition that inducements of a breach of contract for a definite term of employment are illegal, even in the case of solicitation by groups of laborers, but, as the Supreme Court of the United States said of that case in *American Steel Foundries* v. *Tri-City Central Trades Council* (257 U. S. 184, 211), the unlawful and deceitful means used [to molest the plaintiff rather than to better the fortunes of the worker] were quite enough to sustain the decision of the court without more." (Cf. *Lamb* v. *Cheney & Son,* 227 N. Y. 418.) It has never been held by this court that a labor union is without justification in fairly setting forth its claims in a controversy over terms and conditions of employment by sign, handbill or newspaper advertisement as a legitimate means of economic coercion, nor does the *Hitchman* case so hold, nor is that case a final authority on this point concerning the laws of New York. ( *Paine Lumber Co.* v. *Neal, supra.*)

The law of the State of New York, as declared by this court, is perhaps more favorable to the defendant than that of the United States Supreme Court or other jurisdictions. The doctrine of the *Hitchman* case as applied to labor disputes by some of our lower courts has never been accepted here, if it has not been specifically rejected. A review of recent cases establishes this fact.

The question whether union tactics, merely persuasive

in character, directed to the inducement of a breach of contract for a term are ever justified was expressly reserved in *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin* (*supra*, p. 267). The court, per ANDREWS, J., said: " Here, however, we do not need to decide whether where the object of the act is to aid in a labor dispute, there is just cause or excuse for such interference with existing contracts, and if not how specific the contract must be, nor how substantial the term of employment contained therein to permit equity to intervene."

In *Interborough Rapid Transit Co.* v. *Lavin* (247 N. Y. 65, 79) the court, per LEHMAN, J., said: " This court has not yet been called upon to decide whether employees may lawfully be urged to make a choice in breach of a definite contract." Of these cases it has been said: " Thus, the judges of a great tribunal indicate their conviction that when dealing with legal problems enmeshed in dynamic social forces, courts ought to decide only the case before them and to remain open to all the wisdom the future may hold." (" The Labor Injunction," by Frankfurter & Greene, p. 42.)

In *Nann* v. *Raimist* (255 N. Y. 307, 314) it was held that it was within the competency of a labor union to announce to the world its thought that another labor union was not dealing with its members in such a way as to promote the interests of organized labor and to persuade by peaceful picketing the employers of such labor to employ the members of the rival union.

In *Steinkritz Amusement Corp.* v. *Kaplan* (257 N. Y. 294), which was a companion case to these now before us, no opinion was written on this point. The court was divided. A majority held that a broad injunction restraining not only picketing but other acts as well should be modified by striking out the restraining provisions except as to picketing. By abuse of picketing, it was held that the union had forfeited the right to picket. CARDOZO, Ch. J., and LEHMAN, J., were of the opinion that the

injunction should be limited to picketing "with an untruthful sign." The injunction was greatly modified although the contract between employer and rival union existed. It was suggested in support of the injunction, as has been held in the cases now before the court, that the right of the defendant peacefully and truthfully to declare to the world that the business practices of the rival union were unjust and that theatres which patronized that union ought not to be patronized by the public had been lost because the plaintiff had a year's contract with the rival union. The answer was that the public had no contract with the employer; that the union addressed itself to the public and that no one was asked to break any contract. The collateral result of the attempted persuasion of the public not to patronize the theatre while it employed the members of the rival union might make it unprofitable for the employer to go on with the contract, but to state fairly and truly to the public that the conduct of the employer is socially objectionable to a labor union is no persuasion to break a contract. This court has never undertaken to restrain such conduct, although it has had the opportunity. It has been at pains to avoid doing so. The cases cited *supra* disclose independence of the *Hitchman* doctrine and of the cases which follow and enlarge upon that doctrine. We would be departing from established precedents if we upheld this injunction. We would thereby give to one labor union an advantage over another by prohibiting the use of peaceful and honest persuasion in matters of economic and social rivalry. This might strike a death blow to legitimate labor activities. It is not within the province of the courts to restrain conduct which is within the allowable area of economic conflict.

The judgments should be reversed and the complaint dismissed in each case, with costs in all courts.

O'BRIEN, J., (dissenting). Plaintiff Stillwell Theatre, Inc., maintains a motion picture theatre in Brooklyn.

By contract with defendant Local 306 of the International
Alliance of Theatrical Stage Employees and Moving
Picture Machine Operators Union, based on the principle
of collective bargaining, plaintiff employed only members
of that union as operators. Under that contract, defend-
ant supplied four operators and two assistants at an
aggregate weekly wage of $350. That contract expired
August 31, 1930, and plaintiff declined to renew. Instead
it contracted with another union, the Empire State
Motion Picture Operators, whereby this union agreed,
also on the principle of collective bargaining, to supply
and has supplied to plaintiff's satisfaction three operatives
at an aggregate weekly wage of $155. This contract is
with the union, not with individuals, and is for a fixed
term. Plaintiff's right to change the personnel of the
operators supplied by the union does not authorize it to
cancel its contract with the union. For an agreed dura-
tion, plaintiff may employ no one except members of
this union. Each operative averaged thirty-one and
one-half hours per week of six working days. Defend-
ant had knowledge of the terms of this contract between
its rival and plaintiff. Within a few days members of
Local 306 began and continued to picket the theatre,
displayed signs stating that its owners would not employ
operators who were members of its union, stopped patrons
of the theatre, caused crowds to collect in front of it and
interfered with and injured its patronage. All these
facts have been found by the trial justice and unani-
mously affirmed by the Appellate Division. Also this
finding has been unanimously affirmed: " That the sole
purpose of Local 306 in picketing the Stillwell Theatre was
to induce the public not to patronize said theatre; to
injure and destroy the plaintiff's business and by pressure
and coercion compel the plaintiff to breach the contract
aforesaid between it and said Empire State Motion
Picture Operators Union, Inc., which will not expire
until August 31, 1931." On these findings of fact,

which are supported by evidence, the Appellate Division unanimously affirmed the judgment enjoining defendant, during the continuance of this contract, from doing any act calculated to induce or cause a breach of it and from picketing and patrolling the streets in front of or near the theatre.

The majority of this court believes that the real controversy lies between two unions. As I view the case, the essential dispute hinges upon the question whether plaintiff as employer must become submissive to the demands of one of these unions or allow its business to drift to ruin. As long as any semblance of liberty of contract continues to be recognized by the law, it seems to me that a duty rests upon the courts to vindicate such a right.

The old agreement with defendant was more favorable to employees than this new contract with its rival, but the one now existing certainly cannot offend a reasonable sense of social justice. Conduct by an employer, whereby its employees have obtained steady employment, subsequent to August, 1930, at an average of eight dollars for a working day of five hours is truly far from unconscionable.

The lucid exposition of the reciprocal rights of employer and employee by Judge ANDREWS in *Exchange Bakery & Restaurant, Inc., v. Rifkin* (245 N. Y. 260) met the approval of every member of this court. Our unanimous concurrence respecting legal principles and disagreement by a minority concerning the application of those principles to the facts as construed by the minority is shown in Judge CRANE's dissenting opinion with which two of his associates agreed. All conceded that the hiring at will by the employer might be ended at any time by either party and, therefore, that no contract for a fixed term was involved. The duty of a court of equity to intervene or to refrain when a breach of contract has been induced in a labor dispute was not defined. The question was expressly left open. The right of unions to

conduct strikes by lawful means for the purpose of promoting the interests of labor was freely recognized. In the language of the opinion, picketing connotes no evil but no crowds may be collected on or near the employer's property. Freedom to conduct a business, freedom to engage in labor, each is like a property right, and to prevent repeated violations threatened or probable of property rights an injunction may be granted. Where unlawful picketing has been continued, where violence and intimidation have been used and where misstatements as to the employer's business have been distributed, a broad injunction prohibiting all picketing may be granted. These are the principles expressed in the opinion in that case. In *Steinkritz Amusement Corp.* v. *Kaplan* (257 N. Y. 294, 297), wherein the doctrine of the *Exchange Bakery* case was applied, the picketing was found as a fact, unlike the case at bar, to have been accompanied by violence but, also unlike the case at bar, there was no finding that the sole purpose of the picketing was to compel plaintiff to breach its contract. An injunction was sustained by this court to the extent of restraining picketing of plaintiff's premises, the exhibition of signs and the distribution of notices in front of them. Our mandate proceeded as far as the necessities of that case required; it afforded all practical protection to the plaintiff and conformed with the rule announced in the *Exchange Bakery* case. We decided all that was necessary for decision. Other provisions of the judgment at Special Term, very general in form, which were eliminated by this court, constituted, under the circumstances, nothing more than surplusage. Far from decreeing the right to picket peacefully for the sole purpose of inducing a breach of contract, the effect of our judgment was, as in the *Exchange Bakery* case, to leave the question open. All the security which, in the view of this court, was needed by that plaintiff was accorded. Theoretical discussion in an opinion by way of an essay and other elab-

orate provisions in the judgment would have been purely academic. Although the findings at bar are not identical with those in *Reed Co.* v. *Whiteman* (238 N. Y. 545), they are closely analogous and seem to require an application of the same rule. The coercive nature of defendant's policy and acts is not dissimilar from that pursued in *Auburn Draying Co.* v. *Wardell* (227 N. Y. 1). Without an injunction, damage to this plaintiff would seem to be irreparable. The inference is required that the individual property right of freedom of contract, which is recognized, at least by words, in the *Exchange Bakery* case, would be compelled to succumb to a stronger collective force. Plaintiff would be confronted with a choice either of breaking its contract with defendant's rival and compulsorily resuming relations with defendant or closing its theatre. In the event of reversal of this judgment and a consequent violation by plaintiff of its present contract and a renewal with defendant, the Empire State Union could proceed as defendant is found to have done in the present case, to stop patrons of the theatre, cause crowds to collect in front of it and picket plaintiff's premises with signs denouncing plaintiff as the breaker of a union contract. It could do so for the sole purpose of destroying plaintiff's business and disrupting an agreement for a fixed term by plaintiff and defendant. If we refuse relief against defendant's coercive measures we would be bound impartially to do the same in respect to the weaker union. In such a conflict between these hostile organizations there is the gravest danger that plaintiff would become submerged. Reversal of this judgment might fairly be regarded as a recession in the direction of a relinquishment of this court's equitable powers relating to the protection of property from threatened destruction.

CRANE, LEHMAN, KELLOGG, HUBBS and CROUCH, JJ., concur with POUND, Ch. J.; O'BRIEN, J., dissents in opinion.

Judgments reversed, etc.