MORRIS ENGELMEYER, Plaintiff, *v.* MARCUS SIMON, as Treasurer of the Bakery and Confectionery Workers International Union of America, Local 505, Defendant.

Supreme Court, New York County, June 29, 1933.

*Abraham Chernow*, for the plaintiff.

*Panken & Levy* [*Matthew M. Levy* of counsel], for the defendant.

HAMMER, J.   I am not convinced that the defendant union is responsible for placing kerosene or similar liquid upon the bread and wagon of one Zuch, a customer of plaintiff.   I find that the defendant union did, through its representatives, follow the automobile of the plaintiff, driven by plaintiff's son, making deliveries of bread to plaintiff's customers, for the purpose of obtaining the names and addresses of such customers.   I find that the defendant union, its officers and members, were not guilty of the acts of violence charged and testified to by plaintiff's witnesses.   The plaintiff, I find, on the other hand, breached his contract with the defendant in which he agreed to employ members of defendant union.   His contention is that the union workers voluntarily quit.   This contention is not supported by the evidence.   Plaintiff for a number of months, by frequent violations of the terms of the contract, had been striving to bring about a situation where the defendant would be forced to take some affirmative action against him which might lend some color to a claim of offensive action by defendant and possibly sustain a claim of breach of contract by the defendant. It seems that plaintiff was content with the employment of union workers provided he could have them for longer hours and at smaller wages than fixed by the contract.   An opportunity seemed to present itself to plaintiff when one of the union workers was required to remain away from work by reason of serious illness of such worker's wife from which she later died.   Grasping this as a long-awaited chance, the plaintiff locked out the union workers, refused to listen to the arguments or reasoning by the union delegates and officials, and as a result of the lockout the union was forced to go on strike in defense of itself and its workers.

The union is entitled to picket the plaintiff's shop, provided it does so in a lawful manner.   (*Mills* v. *U. S. Printing Co.*, 99 App. Div. 605; *National Protective Assn.* v. *Cumming*, 170 N. Y. 315, 321; *People* v. *Kostka*, 4 N. Y. Crim. 429; *Park & Sons Co.* v. *National Druggists' Assn.*, 175 N. Y. 1; *Quinn* v. *Leathem*, App. Cas. [1901] 495; *Iron Molders' Union* v. *Allis Chalmers Co.*, 166 Fed. 45; *Reardon, Inc.,* v. *Caton*, 189 App. Div. 501; *Wood Mowing & Reaping Machine Co.* v. *Toohey*, 114 Misc. 185, 196; *J. H. & S. Theatres, Inc.,* v. *Fay*, 260 N. Y. 315.)   In the case of *Exchange Bakery & Restaurant* v. *Rifkin* (245 N. Y. 260), cited by plaintiff in support of his prayer for injunctive relief, it was said: " It is quite true that where unlawful picketing has been continued; where violence and intimidation have been used and where misstatements

as to the employers' business have been distributed, a broad injunction prohibiting all picketing may be granted." It was also said there, as must be said here, " Such is not this case."

The union and its members were attempting to assert what they claimed to be their rights in good faith and, except for the following of plaintiff's automobile to ascertain his customers, in a decent, orderly way, without resort to violence. After two police officers, who testified as witnesses, advised that such act of following plaintiff's automobile was improper, the union desisted therefrom. Their other acts were within the protection of the law. No irreparable damage resulted which could not readily have been remedied by plaintiff's observance of the contract. The picketing of the places of business of some of plaintiff's customers, bearing placards, which advertised the union label and requested sympathizers to purchase bread only with the union label, does not amount to a secondary boycott, and, where no threat, coercion, intimidation or fraud is shown, is not illegal. (*Exchange Bakery & Restaurant* v. *Rifkin*, 245 N. Y. 260; *Interborough Rapid Transit Co.* v. *Lavin*, 247 id. 65; *Nann* v. *Raimist*, 255 id. 307; *J. H. & S. Theatres, Inc.*, v. *Fay*, 260 id. 315; *Public Baking Co.* v. *Stern*, 216 App. Div. 831.) (See, also, *Public Baking Co.* v. *Stern*, 127 Misc. 229; *Spanier Window Cleaning Co., Inc.*, v. *Awerkin*, 225 App. Div. 735; *Reardon, Inc.*, v. *Caton*, 189 id. 501.)

In *Stillwell Theatre, Inc.*, v. *Kaplan* (259 N. Y. 405) it was stated: " It has never been held by this court that a labor union is without justification in fairly setting forth its claims in a controversy over terms and conditions of employment by sign, handbill or newspaper advertisement as a legitimate means of economic coercion, nor does the *Hitchman Case* [*Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229] so hold, nor is that case a final authority on this point concerning the laws of New York."

The acts of the defendant here were not a secondary boycott within the decision of *Auburn Draying Co.* v. *Wardwell* (227 N. Y. 1), relied upon by plaintiff.

The union here, faced with great provocation, seems to have acted with a commendable dignity and restraint. A large percentage of its members were out of work, and those working were sharing their time and even their wages in an attempt to alleviate hardship. The plaintiff, one of their own of long standing and good repute in the union, after frequent threats of breach of many minor violations, discarded his agreement and locked out his union employees. Reasonable adjustment attempted by the union was refused. The strike, as a last resort in self-protection, was inevitable. During the trial attempts were made by the union to arrive

at a reasonable adjustment. Plaintiff, asserting a family shop, which is not sustained by the evidence, was adamant.

These are times for co-operation and conciliation between employer and employee, capital and labor. Self-interest requires that. Proper human feeling suggests it. The condition of unemployment, the lack of business, the state of the community, the welfare of the people, of the State and of the country, all point out the necessity. The leaders of the nation are striving to move the slow and inert from the morass of depression into the activity and progress of the high road to prosperity and success. Courts do not and should not take sides in the ceaseless struggle between capital and labor, but where every effort has been exerted by the workmen to reasonably adjust their differences with their employer, and every proper offer has been made and is still open, and is arbitrarily rejected by the latter, he may expect little sympathy and no aid from a court of equity, moved as it is and should be by the general condition of the times, the necessity for change and improvement, and the welfare of those whose only means of sustenance and support is derived from toil and employment.

I find that no right of property of the plaintiff has been illegally interfered with or violated by defendants, and the latter are entitled to judgment.

Submit accordingly on notice.