REMINGTON RAND, INC., and Others, Respondents, *v.* VERNON M. CROFOOT, Individually and as President of Machinists' Local Union No. 381, and Others, Appellants.

Fourth Department, Extraordinary Term, August 18, 1936.

*Clifford H. Searl,* for the appellants.

*George H. Bond,* for the respondents.

*Warren Winkelstein,* for the American Civil Liberties Union, as *amicus curiæ.*

TAYLOR, J. The plaintiff corporation is extensively engaged in business, a part of which is the manufacture and sale of typewriters. One of its factories, with accompanying offices, is located in the city of Syracuse, and in it the corporation has long been furnishing work for more than 1,600 employees. The individual plaintiffs are persons who claim that they have been damaged in their persons and that their property rights have been invaded by defendants and by others acting in co-operation with defendants. The defendants are industrial unions and their representatives. Sometime since the plaintiff corporation and the defendant unions became involved in a dispute with reference to the status and rights of the corporation employees. Plaintiffs brought this action against defendants and in their complaint alleged that in May, 1936, the defendants called a strike of the Syracuse employees of Remington Rand, Inc.; that thereafter the defendants and persons acting under their command and in co-operation with them willfully and maliciously caused crowds of people to assemble near the Remington Rand plant in Syracuse, brought about the blocking of the entrance to the plant and the exit therefrom, used abusive and insulting language directed at the employees of the corporation and other persons entering and leaving the plant, threatened such persons with serious injury to their persons and property, and actually did inflict such serious injuries upon them. It is further alleged that these acts have unlawfully prevented many persons from continuing in the employ of plaintiff corporation, have prevented the corporation from operating its plant and have caused and will continue to cause said plaintiff great and irreparable damage unless defendants are enjoined by the court. This is the gist of the complaint. Particular kinds of relief appropriate to the claims specified are demanded and a temporary injunction, followed by a permanent injunction, is sought. The complaint also contains allegations which result, so far as the pleading is concerned, in a conformity with the requirements of section 876-a of the Civil Practice Act. An elaborate bill of particulars was furnished by plaintiffs and is a part of the record.

As a result of much litigation in this State our court of last resort has specified in great detail the rights and the limitations upon the rights of persons and organizations seeking to interfere with the conduct of the business of employers of labor and with the operations of the employees. It is declared that strikers, other persons representing unions, and any persons interfering with the business of an employer of labor may by any lawful means try to persuade employers to change their business practices and may try to persuade employees to join or leave a union or to leave the service of their employers. As has been said, " peaceful and honest persuasion in matters of economic and social rivalry" cannot be prohibited. (*Stillwell Theatre, Inc.,* v. *Kaplan,* 259 N. Y. 405.) Either orally or by distribution of handbills and circulars or otherwise, potential customers may be requested not to patronize an employer. So, too, " picketing " may be utilized to bring about the results mentioned so long as it is " peaceful " and not accompanied by violence, unlawful threats or intimidation, express or implied. But held to be unlawful are actual, willful injury to person or property, threatening or intimidating, directly or indirectly, by placard, sign, or by word of mouth, or by force, or otherwise, any officer or employee, gathering in crowds, or causing any crowd to collect at the employer's place of business, loitering or congregating in numbers, and annoying or maliciously accosting employees, employers or customers. Free ingress and egress to and from plants by strangers, customers, employees or officers may not be impeded. " The right to carry on business — be it called liberty or property — has value. To interfere with this right without just cause is unlawful." (Mr. Justice BRANDEIS in *Dorchy* v. *Kansas,* 272 U. S. 306, 311.) And where such unlawful acts are threatened, whether or not they have been perpetrated, injunctive relief may be given by the court to prevent future wrongdoing. (*Wise Shoe Co., Inc.,* v. *Lowenthal,* 266 N. Y. 264; *J. H. & S. Theatres, Inc.,* v. *Fay,* 260 id. 315; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 id. 260; *Steinkritz Amusement Corp.* v. *Kaplan,* 257 id. 294; *Stillwell Theatre, Inc.,* v. *Kaplan, supra.*)

The same principles are upheld by the United States Supreme Court and by the courts of many of the States other than New York. (*American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S. 184, 205, 206.)

The issues in this suit, so far as they pertain to plaintiffs' right to a temporary injunction, were brought to a hearing on July 13, 1936, before the Special Term of the Supreme Court at Syracuse, the hearing lasting four days. A great amount of testimony was taken. The court made findings in detail, including those pre-

scribed by section 876-a of the Civil Practice Act, findings ample to sustain the order entered. The order granted and here on appeal in substance temporarily enjoins the defendants, their agents, assistants and collaborators — as against plaintiffs, their employees, those seeking employment, and all persons lawfully on plaintiff company's premises — from using violence, coercion or intimidation, from approaching or molesting any such persons in an offensive or disorderly manner, from picketing homes, from interfering with ingress to or egress from plaintiff company's plant in Syracuse, from congregating in crowds on or near said premises and from picketing with more than four pickets, each of whom must wear a badge reading " Picket." It may be well to note here that there have been cases determined in our Court of Appeals where all picketing was forbidden. (See *Nann* v. *Raimist*, 255 N. Y. 307; *Steinkritz Amusement Corp.* v. *Kaplan, supra*.) But it is to be observed that the Special Term has not found such a situation in the instant case. Therefore, we are not called upon to say whether in instances of labor troubles picketing may be lawfully indulged in under all circumstances because of the provision in section 876-a that " no item of relief granted [shall prohibit] directly or indirectly any person or persons from * * * picketing." The order further provides that the temporary injunction shall expire ten days from its entry unless at the expiration of such a period the plaintiffs are ready to proceed to trial (a requirement of section 876-a). However, under all the circumstances presented and pursuant to statements made to this court by counsel on the argument, it seems that this provision of the order has been reasonably complied with.

Section 876-a of the Civil Practice Act is an elaborate and drastic statute dealing with " labor disputes." It was passed in 1935 — and in some respects its exact scope and meaning are hardly clear. The reasons for its enactment are given in section 1 of chapter 477 of the Laws of 1935, of which chapter section 876-a is a part. In said section 1 the policy of the State in the matter of injunctive relief from the court in labor relations is fully stated. That policy, in general, is to prevent the granting of such a potent remedy lightly or informally, for the reason that the *status quo* is usually seriously altered by even a temporary injunction, because injunctive relief is usually irreparable and because " Delay incident to the normal course of appellate practice frequently makes ultimate correction of error in law or in fact unavailing."

We will assume that this is a " labor dispute " within the contemplation of section 876-a, although it is at least a matter of great doubt. ( *United Electric Coal Companies* v. *Rice*, 80 F. [2d] 1; certiorari denied, 297 U. S. 714.)

The plaintiffs, as I have said, have in their complaint met the formal requirements of the section as a matter of pleading. And after all, complicated and comprehensive as section 876-a is, the real questions raised by appellants under it are but questions of fact to be resolved by the court. The section does not deprive the courts of jurisdiction. This and similar statutes deal in the main with practice and procedure; they are declaratory of the existing law and do not render lawful any act which was unlawful when the statutes were passed. (See cases cited 27 A. L. R. 413–415.)

Defendants, while contending that some of the other requirements of the section have not been satisfied by plaintiffs, make special claim that plaintiffs have not proved enough to meet the demands in subdivision 1, paragraph (e), and subdivision 4, reading as follows:

" 1. * * * (e). That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection; * * *."

" 4. No injunctive relief shall be granted to any plaintiff who has failed to plead and prove compliance with all obligations imposed by law which are involved in the labor dispute in question, or who has failed to allege and prove that he has made every reasonable effort to settle such dispute either by negotiation or with the aid of any machinery of mediation or voluntary arbitration, provided for by law or contract between the parties."

The Special Term justice in his memorandum states why he finds that the public officers have been unable to furnish adequate protection to plaintiffs. The record furnishes evidence sufficient to authorize these statements and the finding covering the subject. We reach the same conclusion as to the finding that plaintiffs used all reasonable efforts to settle the dispute, reasonable in the estimation of an arbiter of the facts after he had considered the whole complicated situation presented to him.

As is the case in most labor disputes, there may be something to be said in fairness in behalf of each of these contending groups. In such controversies — involving as they do the livelihood of working men and women and often, too, the solvency and very life of going concerns which are large employers of labor — self-interest often clouds the reason of those involved, often begets passion and unfairness. When conferences and efforts at settlement fail and such controversies reach a point where they come before a court of equity, the determination made there must rest in the wise discretion of the court, subject to review by appellate courts. That is the rule. With such discretion " this court [and any appellate court] may not interfere except for manifest abuse." (*Steinkritz*

*Amusement Corp.* v. *Kaplan, supra.*) We find here no abuse of discretion even with respect to the limitation of the number of pickets to four, there being but one point of ingress and egress, In *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin (supra)* the picketing had been confined to two pickets. In *American Steel Foundries* v. *Tri-City Central Trades Council (supra)* the court said: " We think that the strikers and their sympathizers engaged in the economic struggle should be limited to one representative for each point of ingress and egress in the plant or place of business and that all others be enjoined from congregating or loitering at the plant or in the neighboring streets by which access is had to the plant; that such representatives should have the right of observation, communication and persuasion, but with special admonition that their communication, arguments and appeals shall not be abusive, libelous or threatening, and that they shall not approach individuals together but singly, and shall not, in their single efforts at communication or persuasion obstruct an unwilling listener by importunate following or dogging his steps." (See, also, *Truax* v. *Corrigan,* 257 U. S. 312, 340.)

With these precedents to guide us and on this record we decline to interfere with the finding as to number of pickets. The injunction granted could not be permitted to stand simply upon a theory that the prohibition of unlawful acts does no harm to any one. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin, supra.*) The order and the finding of the Special Term do stand the legal test, however, if there is sufficient evidence to show that wrongful acts have been actually committed and threatened as indicated. We have examined the testimony given on the hearing and the exhibits in evidence. Disputes there are as to many of the material matters in issue. This is to be expected. But we find no reason for concluding that the justice who saw the witnesses and heard the testimony did not have warrant on all the evidence for making the findings and the order which are before us. To sum it up, the injunction interdicts nothing which our common law says is lawful; that the acts and conduct enjoined have been threatened and in part perpetrated may be reasonably inferred from the evidence; the requirements of section 876-a of the Civil Practice Act have been met.

There are no questions of law in the record requiring reversal or discussion. Therefore, everything considered, we affirm the order appealed from with ten dollars costs and disbursements.

All concur. Present — Taylor, Edgcomb, Thompson, Crosby and Lewis, JJ.

Order affirmed, with ten dollars costs and disbursements.