### TERRIO et al. v. S. N. NIELSEN CONST. CO. et al.

#### No. 195.

District Court, E. D. Louisiana,
New Orleans Division.

Nov. 2, 1939.

T. S. Walmsley, Drew L. Smith, and Richard Dowling, all of New Orleans, La., for petitioner.

Eberhard P. Deutsch (of Deutsch & Kerrigan), of New Orleans, La., for defendants R. P. Farnsworth & Co., H. H. Robertson Co., and A. J. Rife Const. Co.

Denegre, Leovy & Chaffe and John L. Toler, all of New Orleans, La., for defendant Doullut & Ewin, Inc.

H. L. Hammett, of New Orleans, La., for defendants Henry Ericsson Co. and S. N. Nielsen Co., Inc.

Fred C. Marx, of New Orleans, La., for defendant American Heating & Plumbing Co., Inc.

Jos. G. Sachs, Jr., of Louisville, Ky., for defendant American Elevator & Machine Co., Inc.

Bentley G. Byrnes, of New Orleans, La. (Joseph A. Padway, of Milwaukee, Wis., and Vincent F. Morreale, of New York City, of counsel), for defendants Bricklayers No. 1 and others.

PORTERIE, District Judge.

This is a suit in equity by Raymond Terrio, a member of a labor union affiliated with the Congress of Industrial Organization, commonly known as the C.I.O., in his representative capacity, on behalf of a large number of persons similarly situated, against other unions affiliated with the American Federation of Labor, and against individual officers of said unions, and against building construction contractors who employ various craftsmen in the building trades.

In connection with work performed by the building contractors it is necessary to obtain the delivery of materials and commodities. These materials and commodities are delivered to the various construction jobs of the defendant contractors by drivers of the C.I.O. unions and by the A. F. of L. unions. Each of these unions seeks to secure the work for its respective members, and, thus, they are in competition with one another for the performance of this class of work.

This suit is founded on alleged activities claimed to be in violation of the Sherman Anti-Trust Law, passed in 1890, 15 U.S.C.A. §§ 1–7, 15 note, to prevent restraints of trade affecting interstate commerce.

The outstanding material allegations pleaded as a basis of the conspiracy are alleged to consist of attempts on the part of the defendants to procure, through the discharge of members of the United Trans-

port Workers, Local Industrial Union No. 806, affiliated with the C.I.O., the replacement of said C.I.O. drivers of trucks with A. F. of L. drivers of trucks, or to procure the drivers of the C.I.O. union to change their affiliation and become members of the A. F. of L.

It is alleged that the defendants have combined and conspired for the purpose of refusing to accept delivery of material unless the same is delivered by A. F. of L. drivers, and for the purpose of replacing C.I.O. drivers with A. F. of L. drivers.

An overt act of violence is alleged to have been committed by one Manny Moore, business manager of the A. F. of L. Teamsters' Union.

Various motions and answers were interposed by several of the defendants. The material subjects embraced within the motions and answers of the defendant contractors consist of an attack upon the jurisdiction of the Court because the subject matter of the suit does not involve $3,000, and allegations that these deliveries did not come within interstate commerce; also that the petition sets forth a controversy which is a labor dispute within the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and that the Court is governed by that Act in determining whether the petitioners are entitled to injunctive relief.

The defendant unions and their officers have interposed a motion to dismiss the complaint for the reason that the petition on its face does not state a cause of action, contending that the acts pleaded do not constitute a conspiracy in violation of the Sherman Anti-Trust Act; that the petition pleads a controversy which constitutes a labor dispute under the terms of the Norris-LaGuardia Act, and that this Court is governed by the provisions of that Act in determining whether the plaintiffs are entitled to injunctive relief; that the Court does not have jurisdiction over the subject matter or the parties to the controversy; that the petition fails to meet the requirements of the Norris-LaGuardia Act, in that it fails to plead material allegations as a necessary requisite to the taking of proof and the granting of relief under the Norris-LaGuardia Act.

### On Motion to Dismiss.

Does complainant assert a cause of action under the Sherman Anti-Trust Law?

A conspiracy is alleged. We compare this to a chain. The Court feels that at least one of the necessary links to the chain is wanting, or is too weak to hold. This link involving the building contractors in the conspiracy is too weak. We feel they acted within their legal rights. They have a right to select those with whom they shall contract for the hauling of their goods for delivery from train, ship, or highway, to their buildings under construction. Their action cannot serve as the premise for the unwarranted deduction that they are conspirators.

The next link in the conspiracy to break when the legal test is applied is that the actions of the Teamsters' Union or Building Trades' Unions are alleged by complainant as acts of conspiracy in restraint of trade under the Anti-Trust Act. The Court considers these actions as "lawfully carrying out the legitimate objects" of these unions.

Such competition between labor unions is lawful, and the acts pleaded in furtherance thereof, even to the extent of threatening strikes in furtherance of such lawful object, are lawful and proper. There can be no conspiracy to perform lawful acts in furtherance of a lawful purpose. The allegation that A. F. of L. unions threaten to stop deliveries is tantamount to an allegation that they will engage in a peaceful strike and resort to peaceful economic pressure in furtherance of such strike, and that such activities are legal. The assault by Manny Moore is an individual act, not chargeable to any of the defendants. Even if it were chargeable to the defendants, it would not be an act in furtherance of restraint of trade. It would constitute an unlawful act under the criminal laws against committing assaults. If repeated, it would be enjoined by the Court under the provisions of the Norris-LaGuardia Act, against the use of fraud and violence in labor disputes.

The quite recent case of Senn v. Tile Layers Protec. Union, 1937, 301 U.S. 468, 57 S.Ct. 857, 863, 81 L.Ed. 1229, is illuminative. We quote: "There is nothing in the Federal Constitution which forbids unions from competing with nonunion concerns for customers by means of picketing as freely as one merchant competes with another by means of advertisements in the press, by circulars, or by his window display. Each member of the unions, as well as Senn, has the right to strive to earn his living. Senn

seeks to do so through exercise of his individual skill and planning. The union members seek to do so through combination. Earning a living is dependent upon securing work; and securing work is dependent upon public favor. To win the patronage of the public each may strive by legal means. Exercising its police power, Wisconsin has declared that in a labor dispute peaceful picketing and truthful publicity are means legal for unions. It is true that disclosure of the facts of the labor dispute may be annoying to Senn even if the method and means employed in giving the publicity are inherently unobjectionable. But such annoyance, like that often suffered from publicity in other connections, is not an invasion of the liberty guaranteed by the Constitution. Compare Pennsylvania Railroad Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536. It is true, also, that disclosure of the facts may prevent Senn from securing jobs which he hoped to get. But a hoped-for job is not property guaranteed by the Constitution. And the diversion of it to a competitor is not an invasion of a constitutional right."

The above principle established as between the union and the individual, not a member of a union, applies as between the one union and the other union, or as between the C. I. O. member and the A. F. of L. member.

█ For jurisprudential background, consult National Protective Ass'n of Steam Fitters & Helpers v. James M. Cumming et al., 170 N.Y. 315, 63 N.E. 369, 58 L.R.A. 135, 88 Am.St.Rep. 648; Bossert v. Dhuy, 1917, 221 N.Y. 342, 117 N.E. 582, Ann.Cas. 1918D, 661; Nann v. Raimist, 1931, 255 N.Y. 307, 174 N.E. 690, 73 A.L.R. 669; Stillwell Theater, Inc. v. Kaplan, 1932, 259 N.Y. 405, 182 N.E. 63, 84 A.L.R. 6; Kemp v. Division No. 241, 1912, 255 Ill. 213, 99 N.E. 389, Ann.Cas.1913D, 347.

Historically, in the United States the tendency is to make it harder and harder for the activities of labor to form the basis of violation of the Anti-Trust Laws. See Clayton Act of 1914, 38 Stat. 730, amending the Sherman Act of 1890.

Likewise, the present prevailing tendency is to keep the inferior courts of the United States busy as they already are, from the turmoil involved when they issue injunctive relief in connection with labor disputes. The previous procedure has not proved helpful to labor nor has it served to maintain the dignity of our overworked Federal courts. The Congress very properly created the National Labor Relations Board to act as the judicial tribunal for most all labor disputes. Its field of service is being steadily enlarged through generous decisions broadening the jurisdictional application. See Norris-LaGuardia Act, 29 U.S.C.A. § 101–115: Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A. L.R. 1077; Levering & Garrigues Co. et al. v. Morrin et al., 2 Cir., 71 F.2d 284; Senn v. Tile Layers Protec. Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; Edward Lauf and Amalgamated Meat Cutters, etc. v. E. G. Shinner & Co., Inc., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012.

Complainant's suit falls, therefore, in failing to state a cause of action under the Anti-Trust Laws.

█ Now, what is the status of complainant insofar as the Norris-LaGuardia Act is concerned? First, this Court is without jurisdiction, because no allegation of attempt at mediation is made, and, if such had been made, it should have been before the Department of Labor or with such other governmental machinery as is provided. This Court is not reached by the case of complainant.

Second, because Section 107 of the Norris-LaGuardia Act reads, in part, as follows:

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

\*   \*   \*   \*   \*   \*

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

\*   \*   \*   \*   \*   \*

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."

None of these necessary allegations is in complainant's petition. Therefore, this

Court again must sustain the motion to dismiss.

Supporting the above conclusion, we find the following from the very recent case of International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers et al. v. International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America, etc., 106 F.2d 871, Sept. 19, 1939, from the Ninth Circuit:

"Since the acts enjoined were committed in the course of and for the purposes of furthering the Teamsters' aims in a labor dispute as defined in the Norris-LaGuardia Act, it was beyond the power of the court to enjoin any of them, so far as they are lawful. Insofar as the acts are found to be unlawful, the Norris-LaGuardia Act permits injunctive relief only if it be shown, inter alia, that 'the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.' Section 7(e), 47 Stats. 71, 29 U.S.C.A. § 107(e).

"Neither the pleadings nor findings mention the public officers, much less any inability or unwillingness on their part to furnish such protection."

In support, also, see H. E. Blankenship et al. v. Russell Kurfman et al., 7 Cir., 1938, 96 F.2d 450; Donnelly Garment Co. et al. v. International Ladies' Garment Workers' Union et al., 8 Cir., 1938, 99 F.2d 309.

Plea to the Jurisdiction.

(a) *Amount in controversy.*

■ We must now leave the motion to dismiss filed by some of the defendants and go to the building contractors' pleas to the jurisdiction, based on the want of the jurisdictional amount of $3,000.

Under the motion to dismiss all well-pleaded facts were considered as established. One of these facts admitted was that the amount in dispute was over three thousand dollars.

■ ■ The plea as to jurisdiction filed by the building contractors must also be sustained. The evidence offered does not show that any one of the individual plaintiffs was concerned in the necessary amount. Only the loss for one year is to be considered. Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248. Terrio, the complainant, cannot aggregate the yearly earnings of supposed members of his class. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871.

■ The matter in dispute, in truth, is much less than the total yearly earnings of complainant and is asserted to be his right to earn a living free from the alleged interference.

(b) *Interstate Commerce not involved.*

■ In the case of Schechter Poultry Corp. v. United States, 295 U.S. 495, 547, 55 S.Ct. 837, 850, 79 L.Ed. 1570, 97 A.L.R. 947, we quote the following language: "The distinction between direct and indirect effects has been clearly recognized in the application of the Anti-Trust Act. Where a combination or conspiracy is formed, with the intent to restrain interstate commerce or to monopolize any part of it, the violation of the statute is clear. * * * But, where that intent is absent, and the objectives are limited to intrastate activities, the fact that there may be an indirect effect upon interstate commerce does not subject the parties to the federal statute, notwithstanding its broad provisions. This principle has frequently been applied in litigation growing out of labor disputes."

An analogy is found to the instant case in the case of Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 551, 77 L.Ed. 1062, where we find the following: "All this, however, is no more than to say that respondents' interference with the erection of the steel in New York will have the effect of interfering with the bringing of the steel from other states. Accepting the allegations of the bill at their full value, it results that the sole aim of the conspiracy was to halt or suppress local building operations as a means of compelling the employment of union labor, not for the purpose of affecting the sale or transit of materials in interstate commerce. Use of the materials was purely a local matter, and the suppression thereof the result of the pursuit of a purely local aim. * * *"

There has been a wide variance of what is or what is not interstate commerce, necessitated because of the great variety of subject matter involved. Distinction has been made as between direct burden and indirect burden on interstate commerce, and application has been either strict or liberal as public welfare demanded. The Court believes that in the instant case an action under the Anti-Trust Act with the active participants being laboring people, employer and employee, and unions, the strict and not the liberal principle should be applied. It follows that interstate commerce is not involved. This Court so finds and declares.

Finally, the various motions to dismiss are all sustained and the several pleas to the jurisdiction are likewise sustained. Judgment will be signed accordingly.