William B. Lawless, J.
This is an action for an injunction pursuant to section 876-a of the Civil Practice Act to restrain defendants from picketing in a labor dispute.
Plaintiff Jamestown Sterling Corporation owns and operates a furniture factory in the Town of Ellicott, Chautauqua County, and employs approximately 180 persons. Plaintiffs Nunn, Wagner, et al. are nonunion employees of Jamestown who seek similar relief. The strike now in progress commenced on October 3, 1961 after the parties were unable to reach agreement on a contract covering terms of employment. In March of 1961, the United Furniture Workers of America petitioned the National Labor Relations Board for certification as bargaining agent for plaintiff’s production employees. Prior to that time, the employees concerned were not represented by a union. A consent election was held on April 12,1961 and defendant union failed to muster a majority vote. The union successfully challenged the *970 outcome of this election before the National Labor Relations Board, and a second election was held on June 28, 1961. As a result of the second election, defendant union was certified as the representative of the employees, and basic terms for a proposed contract were submitted by the union on September 19 or September 26. Admittedly, the list of demands was incomplete. The first meeting between company and union was held on September 28. A second meeting was scheduled for October 6, but this was not held inasmuch as the employees went on strike on October 3.
Plaintiff corporation contends that the union picket line is illegal and has deprived it of the right of ingress and egress. It further contends that several incidents of “ violence ” involving-pickets have occurred and it urges this court to intervene and enjoin the picketing or, in any event, issue an order restraining the union from its alleged illegal activity, or, in the alternative, that the court limit the number of pickets.
Defendants moved to dismiss the complaint herein under rule 107 of the Rules of Civil Practice at the outset of the hearing. However, we conclude that this court does have jurisdiction of the subject matter insofar as the police power is concerned. Other aspects of the case may properly be before the National Labor Relations Board. However, this does not deprive a State court from enforcing its statutes. (See Labor-Management Reporting and Disclosure Act of 1959, tit. VI; U. S. Code, tit. 29, § 401 et seq.)
Plaintiffs offered proof in an effort to show that the company was unable to remove and thereby preserve 100,000 board feet of lumber from the company’s lumber yard because of the interference of the pickets and the failure of the local police to furnish adequate protection to open the picket lines and the company alleges that several incidents of violence involving pickets have occurred. A nonunion employee, one Sam Zembardo, testified to a scuffle between himself and two pickets who were attempting to bar his entrance to the plant on October 4. Another nonunion employee, Gordon Wagner, testified that on October 9, he was kneed in the groin and his glasses were torn from his face and lost while attempting to get through the picket line into the plant. One Mrs. Hazel Brown, an employee, testified that she was elbowed, pushed and shoved by the pickets when she was prevented from entering the plant on October 19. Various other employees testified that crowds of pickets congregated in the entrances to the plant.
With respect to each of these alleged incidents, the union, through numerous employees, has vigorously disputed the *971 manner in which they occurred. The union offered witnesses who testified that Zembardo ran at them while they were standing in front of the rear door to the plant; that they jumped aside, and that the door was torn from its hinges as the result of his running against it. Other employees testified that they observed Gordon Wagner not to be wearing eyeglasses on October 9, the date when he claims they were torn from his face. One of the pickets admitted that he came in contact with Wagner, but maintains that his contact was accidental and he denied that he kneed Wagner in the groin. Other union members testified that Mrs. Brown was persuaded not to cross the picket line and they denied that force was used to restrain her. Seven police officers who patrolled the area on and after October 3, 1961 testified in substance that at no time was there any violence and testified that at no time were any of them ever requested to make an arrest.
I.
The law is clear that every union is entitled to the right to picket peacefully, so long as their activities do not lead to violence, disorder or disregard of the company’s property. In Wood v. O’Grady (307 N. Y. 532, reargument denied 308 N. Y. 757 [1955]), the Court of Appeals made clear this right, and neither of the parties to this litigation dispute that right.
Peaceful picketing is an exercise of the right of free speech and thereby receives constitutional safeguards, as well as the protection of section 876-a of the New York Civil Practice Act. (Thornhill v. Alabama, 310 U. S. 88 [1940]; see Drivers Union v. Meadowmoor Co., 312 U. S. 287 [1941]; Thomas v. Collins, 323 U. S. 516 [1944].) Under section 876-a of the Civil Practice Act, it is incumbent upon the party who seeks injunctive relief to prove by a fair preponderance of the evidence each of the items set forth in paragraphs (a) to (f) of subdivision 1 of that section. Such a showing must include proof that unlawful acts have been threatened or committed and that such acts will be executed and that such acts will be continued unless restrained; that substantial and irreparable injury to complainant’s property will follow unless the relief is granted; that greater injury will be inflicted upon complainant by the denial of the injunction than will be inflicted on the defendant by the granting of it; that complainant has no adequate remedy at law; that the public officers charged with the duty to protect complainant’s property have failed or are unable to furnish adequate protection, among others. Before applying the law, however, the court must first *972 determine the facts, and in this case, the facts are in sharp dispute.
With regard to the incident involving Samuel Zembardo, we find as a fact that he left his automobile and ran for some distance onto the premises of the plant and toward two pickets; that the pickets did in fact move to avoid him and he crashed into the door. With regard to the incident of October 9, we find that Gordon Wagner was physically pushed and shoved, contrary to his rights. We also find as a fact that on October 9, Chief Widland was able to maintain order and to assist three employees across the picket line, in accordance with their rights. With regard to the incident which occurred when the company attempted to remove 100,000 board feet of lumber, we believe plaintiff was denied access to its plant because of a misunderstanding between the parties as to their mutual rights. We could not characterize this incident as a violent one or one wherein the public authorities were unable to exercise control of the situation. On all the proof we conclude that the picketing has been peaceful with exceptions not amounting to violence.
As we read section 876-a of the Civil Practice Act, it is incumbent upon the plaintiffs to show that “unlawful acts ” have been threatened or committed and that such acts will be executed or continued unless restrained. In this regard, plaintiff has failed to carry its burden of proof. It is incumbent that plaintiff show that the public officers charged with the duty to protect their property have failed or are unable to furnish adequate protection. In this regard, seven police officers, representing county, town and village law-enforcement agencies, testified in substance that they were and are able to handle the situation. We are particularly impressed with the fact that there is no evidence of physical violence, and there is uncontradicted proof that no request for an arrest has ever been made to any of the police officers in the area since the strike commenced.
The right to picket may not be taken away merely because there have been isolated incidents of abuse in the course of picketing falling short of violence. (See Cafeteria Union v. Angelos, 320 U. S. 293 [1943].) We are convinced that in the case before us some defendants engaged in a scuffle with those attempting to cross the picket line but such incidents have not permeated the defendants ’ conduct so as to require a cessation of all picketing in order to protect plaintiff against injury. (See Pennock Co. v. Ferretti, 283 App. Div. 527.) In those cases where injunctions have issued, the records disclose real violence. In Remington Rand, Inc., v. Crofoot (248 App. Div. 356, affd. 279 *973 N. Y. 635 [1938]), the record shows that the picketing was characterized by a police officer as “mass picketing ’ ’. Witnesses referred to it as “ heal ” and “ toe ” picketing. There was proof of violence, name calling, physical violence, picketing of the employees’ homes, stones were thrown through windows of the employees’ residences, and several arrests were made for disorderly conduct. There were as many as 80 policemen at the scene. While this kind of situation justified judicial intervention, the proof in the case before us falls far short of it. In the strike before us, there is proof of isolated instances of rowdy conduct, not violent in character.
The law is clear that the employer has a legal right of ingress and egress without prior consultation with the union leadership, and employees seeking to enter the plant have the right to do so, without interference from the pickets. So long as these conditions obtain, this court will not substitute its judgment for that of the police officers directly charged with maintaining order in the area surrounding plaintiff’s plant. The application for injunctive relief is therefore denied.