## HANSON v. LAGERSTROM.
### No. 12443.

Circuit Court of Appeals, Eighth Circuit.

Feb. 8, 1943.

Thomas M. McCabe, of Duluth, Minn. (McCabe, Gruber & Clure, of Duluth, Minn., on the brief), for appellant.

M. H. Greenberg, of Eveleth, Minn. (Henry Paull, of Duluth, Minn., on the brief), for appellee.

Westley W. Silvian, Atty. for Administrator of the Wage and Hour Division, United States Department of Labor, of Washington, D. C. (Irving J. Levy, Acting Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., James M. Miller, Regional Atty., of Minneapolis, Minn., and Flora G. Chudson, Atty., United States Department of Labor, of Washington, D. C., on the brief), amicus curiae.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment for plaintiff in an action brought to recover wages and overtime compensation under the provisions of the Fair Labor Standards Act of 1938, Title 29 U.S.C.A. § 201 et seq. We shall refer to the parties as they were designated in the trial court.

Plaintiff alleged that he and defendant were within the coverage of this act and that he had performed services for which he had not been compensated at the minimum wage and overtime rates prescribed by Sections 6 and 7 of the Act. Defendant by his answer denied that the parties were engaged in commerce, or the production of goods for commerce, and specifically alleged that plaintiff was excluded from the benefits of the Act under the provisions of Section 13(a)(2). The court found the issues in favor of plaintiff and from the judgment entered defendant prosecutes this appeal, asking reversal on the ground that: (1) the operation of the cook camp in connection with his logging and transportation activities did not amount to engaging in commerce or the production of goods for commerce within the meaning of the Act, and (2) the cook house was a retail or service establishment and as such exempt.

The facts bearing on this question are not in serious dispute. Defendant was engaged in the business of cutting, skidding, and hauling pulpwood in Koochiching County, Minnesota. All the pulpwood cut, skidded and hauled by his employees was sold and delivered by him pursuant to a contract to the Minnesota and Ontario Paper Company at International Falls, Minnesota, where it

was converted into products which were sold throughout the United States. Speaking of his relations with the Minnesota and Ontario Paper Company defendant testified that he took the job at so much to put in their pulpwood, so that all the pulpwood which he cut was cut for Minnesota and Ontario Paper Company. He described himself as a general contractor. During the months of February and March, 1940, the period here involved, the principal activities carried on by defendant's employees were the skidding, loading and snow and ice road hauling of pulpwood. In connection with this enterprise defendant maintained and operated a camp which included a bunk house and a cook house for the purpose of boarding the men who did the cutting and skidding. The cook house was maintained for the purpose of feeding defendant's employees and its operation was entirely dependent on the continuance of local pulpwood operations. This cook house was the only available eating facility in the neighborhood, the nearest restaurant being at Little Falls, Minnesota, 13 miles from the camp, and if the logging employees who stayed in camp were not boarded in the cook house it would be necessary to transport them to Little Falls or to Big Falls, Minnesota, each place being about 13 miles distant from the camp. Defendant's working force consisted of approximately 60 men who slept and ate at the camp, and 15 or 20 "shackers" and "farmer-loggers" who lived in their own shacks in the vicinity. The workers, other than the shackers, ate all their meals at the cook house except that when the weather was inclement, or the place of work a considerable distance away, the noon meal was taken out to them. About 4 to 6 meals per day were furnished to persons who were not employees of defendant.

Plaintiff was employed by defendant as a cookee, his duties were to serve meals at the cook house, to assist in the preparation of food, to keep the kitchen and the premises clean, and to wash the dishes and utensils in which the food was prepared and served.

The Act makes it unlawful to transport, offer for transportation, ship, deliver or sell in commerce, or to ship, deliver or sell with knowledge that shipment, delivery or sale thereof in commerce is intended, any goods in the production of which any employee is employed in violation of Sections 6 and 7 of the Act. Sec. 15(a)(1). By Section 3(b) commerce is defined as trade, commerce, transportation, transmission or communication among the several states or from any state to any place outside thereof. As defendant sells pulpwood to be converted into wood products which are intended for shipment and sale in interstate commerce he is, we think, subject to the provisions of the Act in the general scope of his activities. Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165; Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897; United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Warren-Bradshaw Drilling Co. v. Hall, 63 S.Ct. 125, 87 L.Ed. ——, opinion filed November 9, 1942; Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1120, 86 L.Ed. 1638.

Sections 6 and 7 of the Act provide for minimum wages and maximum hours of labor as to employees "who [are] engaged in commerce or in the production of goods for commerce". Section 3(j) contains a definition of "produced" as follows: " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act [chapter] an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The specific question here, however, is whether the cookee who served food for the men working for defendant was engaged in commerce within the meaning of the Act in performing a function necessary to the production of the things the employer sold in commerce. As said by the Supreme Court in Kirschbaum Co. v. Walling, supra: "Unlike the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and the National Labor Relations Act [29 U.S.C.A. § 151 et seq.] and other legislation, the Fair Labor Standards Act puts upon the courts the independent responsibility of applying ad hoc the general terms of the statute to an infinite variety of complicated industrial situations. Our problem is, of course, one of drawing lines. But it is not at all a problem in mensuration. There are no fixed points, though lines are to be drawn. The real question is how the lines are to be drawn—what are the relevant considerations in placing the line here rather than there."

Following the decision of the Supreme Court in Kirschbaum Co. v. Walling, supra, the Circuit Court of Appeals of the Ninth Circuit in Consolidated Timber Co. v. Womack, 132 F.2d 101, 107, decision filed December 7, 1942, held that work in a cook house was so related to the work of the men actually cutting and hauling timber as to make the employees in the cook house subject to the Act on the theory that what they did was necessary to the production by the employer. We are in accord with that view. Defendant stresses certain facts as indicating that the cook house in the camp, was not an indispensable part of the defendant's operations and that camps could be operated without a cook house where farmers and shackers might be employed, and it is pointed out that such camps now produce about 70 or 75 percent of the timber for pulpwood.

The proximity of hotels at Little Falls and Big Falls, Minnesota, the presence of a highway running past the camp within 150 feet, and other roads kept open the year around, with many men owning cars of their own, are cited as indicating the non-essential character of the cook house. It is also said that the cost of production is the same whether the camp method is used or farmers and shackers are hired. But these suggestions are aside from the question. The fact that defendant might have employed other methods, thus avoiding the necessity of maintaining a cook house, is not important. We are here "confronted with a condition and not a theory". We must here confine our consideration to what was actually done and not to what might have been done.

But defendant contends that plaintiff, because of the nature of his employment, was exempt under Section 13(a)(2) of the Act which provides that "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce" is not covered by the provisions of Sections 6 and 7 of the Act. A like claim was urged in Consolidated Timber Co. v. Womack, supra, and the court in considering it said: "In our opinion the exemption invoked was not intended to apply in a situation such as confronts us in the instant case. Here the cookhouse was a 'necessary' part of the Company's production of goods for commerce. It was not operating with the intent or purpose of showing a profit to the owners from the sale of food or service, but to render a very necessary assistance to the business of the Company, which was the production of logs in interstate commerce. The cookhouse was not a separate or independent establishment; it was actually a part of the Company's facilities—a link in the chain—whereby it operated its business and a means whereby it accomplished the purpose of its existence."

Defendant did not advertise the cook house as a restaurant but he argues that as meals were furnished to the public at any time, and as the dining hall in a lumber camp is always looked upon as a place to which the public may go to eat, the cook house was a service or place of retail business. The evidence indicates that from 4 to 6 meals a day were served to the public. Employees and the public paid 35¢ per meal, $1.00 for 3. If an employee missed a meal he did not pay for it.

The average crew at the camp was 60 men. In bad weather or when the place of operations was at a considerable distance from the camp, the noon meal was taken out to the men who lodged at the camp. Some truckers ate full or part time at the camp and some of the farmers took noon meals there. On cross-examination defendant said that if operations ceased in the area he would not maintain a cook house. In other words, the service to the public was incidental and so negligible and relatively unimportant that the exemption involved cannot apply.

In Interpretative Bulletin No. 6 the Wage and Hour Division expresses an opinion relative to company cafeterias as follows: "In some cases a company operates in its factory a cafeteria or store which is physically separated from the remainder of the plant and is conducted in the same manner as commonly recognized retail or service establishments which are not affiliated with the company. In these cases the goods or services are sold for cash to the employees and the store is normally open to the general consuming public."

The facts here did not place this cook house within the class mentioned in this bulletin. If, among his activities, defendant maintained a restaurant operated without reference to his industrial activity, it should then not be regarded as a part of his business subject to the Act. The cook house was intended primarily for the benefit of defendant's logging employees and to in-

crease his production operations. It is certainly not a typical retail establishment. It was owned by the defendant and operated by him in connection with his logging operations. When these operations cease the cook house with its accompanying service will disappear.

The judgment appealed from, is therefore, affirmed.