**KUHN et al. v. CANTEEN FOOD SERVICE, Inc., et al.**

**Civil Action No. 44C425.**

District Court, N. D. Illinois, E. D.

Nov. 25, 1944.

Ernest H. Cohen and Herschel Kriger, both of Canton, Ohio, and Max A. Kopstein, of Chicago, Ill., for plaintiffs.

Miller, Gorham, Wescott & Adams, of Chicago, Ill., for defendants.

LA BUY, District Judge.

The plaintiffs as employees and former employees of the defendants instituted this suit to recover minimum wages and overtime compensation under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and also a common law claim for work and labor.

### The Common Law Claim.

The complaint is framed on the theory of a class suit on behalf of about five thousand employees, with the aggregate amount of the claims of all the employees fixed at $2,500,000. Of this amount the complaint alleges that there is due from the defendants unpaid minimum wages and overtime compensation in the sum of $1,000,000 and an additional amount as liquidated damages, pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), and that there is due to the class for whose use and benefit the suit is brought the sum of $500,000 for work and labor performed by the plaintiffs and the other employees for the defendant. The common law claim for $500,000 for work and labor performed by the 5,000 employees is not segregated among the said employees as to any particular amount, and, therefore, the only basis upon which the court can proceed is that each of the 5,000 employees is entitled to an equal share of the said $500,000. That would figure out at $100 due to each of the employees including each of the plaintiffs.

The plaintiffs allege in paragraph II of their complaint that "Plaintiffs bring this action to recover from the defendants unpaid minimum wages and unpaid overtime compensation in the amount of One Mil-

lion Dollars ($1,000,000.00), and an additional equal amount as liquidated damages, pursuant to Section 16(b) of the Fair Labor Standards Act of 1938 (xxx), and to recover the additional sum of Five Hundred Thousand Dollars ($500,000.00), which the defendants owe the plaintiffs and the other employees of the defendant corporation, on whose behalf and for whose benefit this action is brought, for work and labor performed by the · plaintiffs and said other employees, for which the defendant corporation has failed and refused to pay them." The language thus quoted is plain and unqualified, so that the court must conclude that the plaintiffs claim is for $2,000,000 under the Fair Labor Standards Act and $500,000 for services for work and labor performed which is not claimed under the provisions of said Act.

■ The defendants have moved to strike from the complaint all reference to the common law claim described in the complaint. Inasmuch as the amount claimed to be due and owing to each of the 5,000 employees is in the sum of $100, the only theory on which the plaintiffs may sustain the requisite jurisdictional amount of $3000 in cases of diversity of citizenship is by aggregating the various amounts claimed to be due to the plaintiffs and other persons similarly situated. But if we assume that plaintiffs may properly maintain this suit as a class action, it is well settled that in a class action in which the character of the right involved is several, the amounts due to the various parties may not be aggregated for the purpose of conferring jurisdiction on the court, and that a general allegation in the complaint that there is more than $3000 involved is of no avail when the detailed facts show that that sum is not involved for any plaintiff. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Andrews v. Equitable Life Assur. Soc., 7 Cir., 124 F.2d 788; Woods v. Thompson, 7 Cir., 14 F.2d 951; Robbins v. Western Automobile Ins. Co., 7 Cir., 4 F.2d 249; Terrio v. Nielsen, D.C., 30 F.Supp. 77.

■ In the opinion of the court the complaint does set forth facts which confer jurisdiction upon the court with reference to any common law liability for work and labor done and performed for the defendants. Therefore, all reference to the common law liability of the defendants, exclusive of the claim of plaintiffs under the Fair Labor Standards Act should be stricken from the complaint.

### The Claim Against the Individual Defendants.

The complaint alleges that the Canteen Food Service, Inc. is an Illinois corporation which maintained and operated industrial restaurants, cafeterias, canteens and other food dispensing services which were located at and operated in conjunction with certain named industrial and manufacturing plants, at each of which locations the defendant corporation was engaged in the purchasing, preparation, sale and distribution of food and food products solely and entirely for and to the employees of said industrial and manufacturing plant; that the defendant corporation operated said industrial restaurants, etc. solely and exclusively for the use and benefit of the employees of the several industrial and manufacturing plants above set forth and were not open or available to the patronage of the general public, but that the defendant corporation's employees, in the course of their employment, purchased food and food products, prepared and processed same, and sold and served said food and food products to the employees of said industrial and manufacturing plants, in restaurants, cafeterias and other places of service maintained by the defendant corporation or by said industrial and manufacturing plants, on the premises of and in said plants; that said industrial and manufacturing plants were engaged in the manufacture and production of goods (describing them) which were transported and used in interstate commerce.

The complaint further sets up the character of work done by the various employees of the defendant corporation; it is alleged that said employees are and were all covered by the provisions of the Fair Labor Standards Act; that the number of hours worked by the various employees was in excess of the maximum hours provided in said Act, and that plaintiffs were thus

entitled to one and one-half times the regular rates at which they were employed; and that the defendant corporation did not pay the said employees at the minimum rate fixed in said Act and that said defendant corporation is liable for the difference between the amount actually paid and the minimum amount fixed by the said Act.

The plaintiffs further aver in their complaint "that the defendant corporation is indebted to all of the employees on whose behalf and for whose benefit this action is brought, in an aggregate amount in excess of One Million Dollars ($1,000,000) for overtime compensation as aforesaid, and for the failure of the defendant corporation to pay to said employees the minimum rates of pay as aforesaid, and an additional equal amount as liquidated damages" (P.11 of complaint); and it is further averred that the individual defendants are partners doing business as Canteen Food Service (not inc.), and "that said partnership and the several partners thereof assumed and agreed to pay all of the debts and obligations of said corporation. Plaintiffs say that thereby said partnership and the several partners thereof became liable to the plaintiffs and the employees aforesaid, for the liabilities of said corporation to the plaintiffs and said employees, as hereinbefore set forth."

The claim of plaintiffs against the individual defendants as partners thus is based solely and exclusively upon the claimed assumption and agreement to pay all of the debts and obligations of the defendant corporation. This liability, if any, arises under a contract and not under the Act, and there are no other allegations in the complaint which set up any liability of the partnership under the Act. Under these facts the claim of the plaintiffs against the individual defendants can only be sustained if there are sufficient allegations of diversity of citizenship and jurisdictional amount of $3,000. The claim of the 5,000 employees upon whose behalf the suit is instituted is set at $2,500,000 or $500 for each plaintiff and each employee. The claims of the plaintiff and the other employees cannot be aggregated under the authorities above set forth.

■ It follows that there are not sufficient allegations in the complaint with reference to the amount of $3,000 which is imperative to confer jurisdiction on this court insofar as the individual partners are concerned. Therefore, all allegations in the complaint with reference to the individual defendants should be stricken and this cause dismissed as to said individual defendants.

### The Claim Against the Corporation.

Plaintiffs allege that they and the class of employees which they claim to represent herein consists of purchasing agents, cooks, waitresses, counter-girls, bus-boys, cart-girls, dietitians, salad-makers, cashiers, salesladies, salesmen, helpers, laborers, clerks, office employees and in various other capacities, all of whom were engaged in the production of goods for interstate commerce within the meaning of said Fair Labor Standards Act.

■ There is no jurisdictional amount necessary in a suit arising under the Fair Labor Standards Act because under 28 U.S.C.A. § 41(8), the District Court is vested with original jursidiction of "all suits and proceedings arising under any law regulating commerce." This court, therefore, has jurisdiction of this suit if the plaintiffs present a case arising under the Fair Labor Standards Act, irrespective of the amount involved or of diversity of citizenship.

Proceeding to an examination of plaintiffs' claim insofar as it is alleged to come within the scope of the Act, we find that the plaintiffs do not contend that they were "engaged in commerce" while employed by the defendant corporation, but their claim is that they were engaged in the "production of goods for commerce," as defined in Sec. 3(j) of the Act, which is as follows:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any man-

ner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

Manifestly, the plaintiffs were not employed in producing, manufacturing, mining, handling, transporting or in any manner working on goods, so that if they are covered under the Act, it must be that they were employed in a process or occupation necessary to the production of goods that had been produced, manufactured, mined, handled or in any other manner worked on, and destined for use in interstate commerce.

The basic question for decision is, therefore, whether the work of plaintiffs was "necessary to the production" of goods in the industrial and manufacturing plants named in plaintiffs' complaint.

Plaintiffs in their brief characterize the work of plaintiffs as follows: "Plaintiffs are employed in preparing and serving food to the employees of a number of industrial plants, all of which plants are engaged in producing goods for commerce. The industrial restaurants, canteens and similar units in which plaintiffs are employed are owned either by the manufacturing concerns themselves or by defendants, but all are located within the premises of the industrial plants. All *exclusively* serve the employees of these plants and none serve the general public."

In the case of McLeod v. Threlkeld, 5 Cir., 131 F.2d 880, the employer of the plaintiff by contractual arrangement with a railroad furnished boarding and bedding services which were available to the railroad's maintenance-of-way workers, and the plaintiff who was a cook on one of the commissary cars claimed that he was covered by the Act. In stating the facts the court said, 131 F.2d at page 881: "The employer was engaged in furnishing meals and beds to certain maintenance-of-way employees of a railroad. The meals were prepared and served and the beds were furnished in railway cars operating on the railroad's tracks by contract arrangement. Employees using the service paid for their own board.

"Appellant was employed by appellee as cook on one of its commissary cars. His duties were to care for the car, prepare and serve meals, take care of the bedding, and keep records of the services furnished to the boarders. All of his duties were performed in Texas."

In deciding the case the court said, 131 F.2d at page 881: "Here the employee did not have 'a close and immediate tie' with a process for production of goods for commerce, as did the employees involved in the Kirschbaum and Warren-Bradshaw cases. McLeod was not an employee of the railroad; he performed no services for the railroad, and the railroad exercised no authority over him."

On certiorari to the Supreme Court, that court in 319 U.S. 491, 63 S.Ct. 1248, 1249, 87 L.Ed. 1538, affirmed the judgment of the Circuit Court of Appeals and held that the plaintiff cook was not "engaged in commerce." The court in passing on the character of the work of the plaintiff and its relation to commerce said 319 U.S. at page 497, 63 S.Ct. at page 1252: "It is not important whether the employer, in this case the contractor, is engaged in interstate commerce. It is the work of the employee which is decisive. Here the employee supplies the personal needs of the maintenance-of-way men. Food is consumed apart from their work. The furnishing of board seems to us as remote from commerce, in this instance, as in the cases where employees supply themselves. In one instance the food would be as necessary for the continuance of their labor as in the other."

That case is similar to the case at bar except that the cook (to take one of the plaintiff employees as an example) in the present case worked in a manufacturing plant in which goods were produced for commerce. But plaintiffs claim that the production of goods in the plant in which the defendant corporation maintained a restaurant or cafeteria, at which employees of the manufacturer might purchase food, makes plaintiffs engaged in a process or occupation "necessary to the production of goods" as defined in said Act.

Whether the plaintiff cook was employed by an independent contractor who was furnishing food to maintenance-of-way men

engaged in interstate commerce, or by an independent contractor who was furnishing food to employees engaged in producing goods, the character of the work of the plaintiff would be the same. The character of the work of maintenance employees (including janitors, elevator operators, watchmen, engineers, carpenters, etc.) is the same whether the maintenance employees are working in a building in which no goods are produced or manufactured but interstate commerce is carried on by certain of the tenants in the building, or whether the maintenance employees are working in a building in which a substantial portion of the business of the tenants is the production of goods for use in interstate commerce. Yet the courts have made a distinction and have almost universally held that the maintenance workers in the building in which goods are manufactured or produced are covered by the Act, Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S. Ct. 1116, 86 L.Ed. 1638; Walton v. Southern Package Corporation, 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Fleming v. Arsenal Bldg. Corp., 2 Cir., 125 F.2d 278; Walling v. Sondock, 5 Cir., 132 F.2d 77; Walling v. Mid-Continent Pipe Line Co., 10 Cir., 143 F.2d 308; Fleming v. Pearson Hardwood Flooring Co., D.C., 39 F. Supp. 300; Holland v. Amoskeag Mach. Co., D.C., 44 F.Supp. 884; Shain v. Armour & Co., D.C., 50 F.Supp. 907, while maintenance employees in a building in which no goods are produced for commerce are held not to be "engaged in commerce" although some of the tenants may be engaged in transacting business which falls within the definition of interstate commerce. Rosenberg v. Lorenzetti, 9 Cir., 137 F.2d 742; Lofther v. First National Bank of Chicago, 7 Cir., 138 F.2d 299; Stoike v. First National Bank, 290 N.Y. 195, 48 N.E. 2d 482.

The reasoning underlying these decisions is that the maintenance of a safe, habitable building is indispensable to the continuous production of goods for use in interstate commerce. Such a conclusion means that the maintenance of a building in a safe and habitable manner is necessary to the production of goods in the building, and it is well known that all of such buildings which are used for the production of goods do have maintenance men employed to keep the building in a safe and habitable manner.

But it does not follow from this line of cases that the furnishing of food to employees in a plant is necessary to the production of goods in a plant. No analogy whatsoever can be drawn therefrom. As was said in the McLeod case above cited: "Here the employee supplies the personal needs of the maintenance-of-way men. Food is consumed apart from their work. The furnishing of board seems to us as remote from commerce, in this instance, as in the cases where employees supply themselves. In one instance the food would be as necessary for the continuance of their labor as in the other." And so with the plaintiffs here; they supplied the personal needs of the employees of the plant in which the goods were manufactured; such employees consumed any food they purchased from the defendant corporation apart from their work; the furnishing of the food is as remote from the production of goods for commerce as it is remote from commerce; the furnishing of the food is as remote from the production of goods for commerce as in cases where the employees supply themselves; and in the case of furnishing food to a maintenance-of-way man engaged in commerce, the food would be as necessary for the continuance of his labor, as the continuance of the labor of a man engaged in the production of goods for use in commerce.

Plaintiffs cite the case of Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101. In that case the Consolidated Timber Co. was engaged in logging operations and operated two cookhouses, the facilities of which were used by substantially all of Consolidated's employees. The court held that the employees of the cookhouse were engaged in an occupation necessary to the production of logs, saying 132 F.2d at page 107: "Here the cookhouse was a 'necessary' part of the Company's production of goods for commerce. It was not operating with the intent or purpose of showing a profit to the owners from the sale of food or service, but to render a very necessary assistance to the business of the Company,

which was the production of logs in interstate commerce. The cookhouse was not a separate or independent establishment; it was actually a part of the Company's facilities—a link in the chain—whereby it operated its business and a means whereby it accomplished the purpose of its existence. Neither cookhouse was in competition with any private restaurant for there is no evidence of an effort to secure the patronage of the general public; the service was sold at cost to those whom the cookhouse was intended to serve: the loggers. The principal activity of the cookhouse definitely was not to furnish service to the consuming public, as such, but was to serve the employees of the Company. * * *

"We are unable to make out any fundamental distinction between the basic purpose and integration in the Company business, between the Glenwood cookhouse and that at Camp 2. If there be any difference, it is but of degree. Each accomplishes the same purpose, each is a unit in the facilities necessary to the Company's production of goods for commerce. The argument that because the Glenwood cookhouse is situated in a village wherein is also located a lunch counter or fountain equipped with a half dozen stools, serving sandwiches and coffee, is not persuasive. No such establishment could supply the necessary meals required by several hundred hungry laborers. Moreover, it is of no consequence to argue that the Company might have employed loggers residing in the vicinity who would not be under the necessity of eating at a cookhouse, because it is not what could have been the fact, but what actually was the fact, upon which the decision must rest."

The court in that case cited the case of Philadelphia Baltimore & Washington R. Co. v. Smith, 250 U.S. 101, 39 S.Ct. 396, 63 L.Ed. 869, as applicable to solving the question in that case, but the Supreme Court in the McLeod case above cited, said that the ruling in the Smith case under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., "should not govern our conclusions under the Fair Labor Standards Act." Also, in the Womack case the court held that the "cookhouse was not a separate or independent establishment; it was actually a *part* of the Company's facilities—a link in the chain—whereby it operated its business and a means whereby it accomplished the purpose of its existence" and again "each is a unit in the facilities necessary to the Company's production of goods for commerce."

That case is readily distinguishable from the present case inasmuch as the cafeteria or restaurant operated by defendant corporation (a) was a separate and independent establishment; (b) it was not a part of the facilities of the Company which operated the plant and produced the goods; (c) it is not shown in the complaint that any restaurant was a link in the chain of production of goods; (d) it is not shown by any allegation of the complaint that the service rendered by these independent establishments of defendant corporation were a means whereby the plant manufacturer accomplished the purpose of its existence. The court is convinced that in cases where the production of goods is in an isolated spot where board cannot be readily obtained by employees, that it would be necessary for the company to furnish board to its employees, and in such cases the furnishing of the board would be a necessary part of the production of the goods. But where an independent contractor furnishes and makes available a service to employees of a plant and it is not shown that this service is a part of the manufacturer's business, then the service in furnishing food and refreshments is for the convenience but not necessity of the employees of the manufacturer, and service is not bound by such a close tie as makes the service thus made available to the plant employees necessary to the production of the goods.

In the case of Relander v. Mason County Logging Co., Wash.Superior Court, 1942, the plaintiffs were employed by the defendant in a cookhouse in a logging camp and claimed coverage under the Act. The court held that where the operations of a company were in an isolated place so that it was necessary to furnish board to its employees it was distinguishable from a case where the logging camp was not inaccessible. The court cites the Womack case and says: "The facts which brought the

case under the Act were clearly distinguishable from those in the case at bar. There the camp was in an isolated place, seventeen miles from any public means of travel and the employees were transported on speeders owned by the company to the camp and were of necessity obliged to get their meals at the cookhouse. Here the camp is served by public highway and a great majority of the men live at home and travel to and fro to work in private cars taking their meals with them and traveling from many points of the surrounding community as far as thirty miles or more from the camp. This is not the case of an isolated camp. The best evidence of the fact that the cookhouse was not necessary to the production of logs is the fact that for five months the work in the woods was carried on while the cookhouse was closed and I think it is significant that the Mud Bay Logging Company carrying on exactly the same kind of operations in the same vicinity for a period of ten years maintained no cookhouse at all at any time. * * *

"There are other cases of similar import but to hold that the employment of the plaintiffs as shown by the record here had a substantial and direct relationship to and was necessary to the production of logs would be an unwarranted construction of the Act."

To hold with plaintiffs' contention would mean that employees of independent contractors, or persons who were rendering service to employees who worked in a plant engaged in the production of goods for use in interstate commerce, would find themselves held liable under the Act as employers of employees, such as (a) laundresses in washing the working clothes of employees as in the case of Castaing v. Puerto Rican American Sugar Refinery, Inc., U.S.Dist. Court for Puerto Rico, in which case the court said: "The allegation of the complaint is that the plaintiffs were engaged by the defendant in the washing, ironing, cleaning and preparation and delivery of caps, towels and aprons which articles were used by some of the employees of the defendant while they were engaged in the production of goods for commerce, namely, the manufacture of raw and refined sugar. Nowhere is it alleged that the plaintiffs themselves were engaged in the production of goods for commerce or that they were engaged in commerce."

The court then refers to McLeod v. Threlkeld above cited and continues:

"If a person who prepares and serves meals for workmen is not within the coverage of the Fair Labor Standards Act, surely one who is employed to launder the clothes worn by the workers would not be entitled to the protection of the Act. I do not overlook the fact that in the McLeod case the workmen whose meals were prepared by the plaintiff were engaged in commerce as defined by the Fair Labor Standards Act and not in the production of goods for commerce. I do not think, however, that this is of any importance.

"The test frequently stated by the courts is not what the employer is engaged in but what is the work of the employee? Neither is it necessary that an employer be engaged either in commerce or in the production of goods for commerce in order to be liable to his employees, if the work of his employees comes within the coverage of the Act. Let us assume that in the instant case the employers had been the workmen whose clothes were to be laundered. Would anyone contend that the laundry women would be within the coverage of the Fair Labor Standards Act in a suit against the workmen whose clothes were laundered. I think no one would make such a contention."

And to apply the example used by Judge Cooper in the above case, let us assume that the plant management permitted the plant employees to maintain a club on the plant premises, and that this employee club maintained a restaurant or cafeteria upon the club premises. Would anyone contend that the club employees would be within the coverage of the Act in a suit against the plant employees? In principle there is no distinction between that kind of a case and the present case.

(b) workers who were engaged in delivering food to the plant to be eaten by the workers in the plant, because the workers would have no food to eat if it was not delivered to the plant. Workers who were engaged in a similar activity were held not to be covered by the Act in the case of

James V. Reuter, Inc. v. Walling, 5 Cir., 137 F.2d 315, 318, in which the court said:

"We disagree with the legal conclusion * * * that the employees when packing, hauling, and delivering goods to vessels in the port of New Orleans for the provisioning of the crew were within the provisions of the Act, for the reason that the commodities so delivered were to be consumed by the crew of the vessel and were not to be either shipped, sold, or delivered in interstate commerce, but were delivered to the ultimate consumer, and, under Paragraph (i) of Section 203, Title 29 U.S.C.A., defining the meaning of 'goods' covered by the Act, the food for the crews would be excluded."

(c) employees working on the plant premises for an independent contractor who has a concession from the plant management for the sale of cigars, cigarettes, candy, chewing gum, papers, magazines, etc.

(d) employees in gymnasiums, play grounds, etc. furnished for the entertainment and relaxation of the plant employees.

Plaintiffs also cite Hanson v. Lagerstrom, 8 Cir., 133 F.2d 120, 122. In that case the court said: "The cookhouse was intended primarily for the benefit of defendant's logging employees and to increase his production operations. * * * It was owned by the defendant and operated by him in connection with his logging operations." The court followed the earlier Womack case and this later case is also distinguishable on the ground that the cookhouse was an integral part of the business of the defendant and maintained as part of its business. And a similar case is Basik v. General Motors Corp., Mich.Circuit Court 1944, in which the cafeteria was company owned and furnished the service as an integral part of the operation of its plant.

The language of the Supreme Court in the McLeod case to the effect that "Food is consumed apart from their work. The furnishing of board seems to us as remote from commerce, in this instance, as in the cases where employees supply themselves. In one instance the food would be as necessary for the continuance of their labor as in the other" seems applicable in the present case. Here the food service was not an integral part of the business of the plant manufacturer, the service was rendered by an independent contractor for profit, the food was sold not as a company service but for the convenience of plant employees, here there is no allegation of inaccessibility of the plants named in the complaint to other sources of food for the employees, and here it is not shown that there is any connection between the purchase of food by any employee of the plant and the production of goods in the plant. Under these circumstances the court is constrained to hold that the complaint does not allege sufficient facts to bring the plaintiffs within the coverage of the Act.

If the plaintiffs can amend their complaint to allege the inaccessibility of any plant so that the furnishing of food was necessary to retain employees at work, and that the defendant corporation contracted with the plant manufacturer to furnish that food, in that inaccessible plant, then leave to amend will be granted. Otherwise, the complaint will be dismissed.

An order may be prepared in accordance with the above rulings.