W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

PICKETT FOOD SERVICE, INC., Defendant.

Civ. No. 7246.

United States District Court
D. New Mexico.

July 8, 1968.

Charles Donahue, Solicitor, Harry Campbell, Jr., Acting Regional Atty., and Truett E. Bean, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., and John Quinn, U. S. Atty., Albuquerque, N. M., for plaintiff.

Wayne C. Wolf, Civerolo, Cushing & Hansen, Albuquerque, N. M., and Roy M. Fish, Fish & Montgomery, Springhill, La., for defendant.

## MEMORANDUM OPINION

BRATTON, District Judge.

This action was brought by the Secretary of Labor to enjoin the defendant from withholding minimum and overtime wages allegedly due defendant's employees under the provisions of the Fair Labor Standards Act, and to enforce the Act's record-keeping provisions.

The defendant, Pickett Food Service, Inc., is a Texas corporation and a wholly owned subsidiary of Pickett Food Service, Inc. of Louisiana. It is agreed that these two corporations, together with Pickett Food Service of El Paso, form an enterprise within the meaning of § 203(r) and (s) of the Act. 29 U.S.C.A. § 203(r), (s) (1964), as amended, 29 U.S.C.A. § 203(r), (s) (1967). The issues to be determined are whether the activities of defendant's employees are a closely related process or an occupation directly essential to the production of goods for commerce, or whether the defendant's operation is within the purview of the exemption accorded retail and service establishments by the Act, *Id.* § 213(a) (2).

The defendant entered into a contract to provide cafeteria and food vending machine services for those persons employed at the National Aeronautical and Space Administration's Apollo test facility at White Sands Missile Range, some twenty miles from Las Cruces, New Mexico. Under the terms of the contract, defendant was to furnish morning and noon meals in its cafeteria at prices set by the contract. The premises and equipment were furnished by the Government. Defendant was to gain the profit or stand the loss from the operation.

Its employees' activities primarily revolved around the preparation and service of food to employees and visitors at the missile range.

The missile range itself was some distance from any town or any other eating place. Further, only those persons with passes were admitted to the facility, restricting its daily inhabitants to employees of the various N.A.S.A. contractors and authorized guests.

Lunch periods for those working at the facility were inadequate to allow them to leave the facility to lunch in town, particularly in view of the necessary, but time consuming, practice of checking passes before admitting persons to the facility.

The volume of business done by the defendant at the missile site, which never approached the $250,000 mark, was insufficient to make the operation profitable, and on June 30, 1967, it ceased its White Sands food dispensing services.

It is plaintiff's contention that the activities of defendant's employees were directly essential to the production of goods for interstate commerce, so that its employees were entitled to the benefits of the Fair Labor Standards Act. 29 U.S.C.A. §§ 206–207 (1964), as amended 29 U.S.C.A. §§ 206–207 (1967).

Plaintiff seeks wages it claims to be due for the period from February 1, 1967, to June 30, 1967.

Defendant's position is that its White Sands operation was a retail and service establishment within the meaning of §§ 213(a) (2) and (20) of the Act and thus entitled to the retail exemption contained therein. Plaintiff's reply is that defendant's operation lacked the "retail concept" in that it was not open to the general public, so that it at no time was entitled to the retail exemption.

The history of the retail exemption discloses that the definition of a retail or service establishment has remained constant over the years, but that the conditions under which it is available have varied and become restricted.

When first enacted, the Act's retail exemption was not defined by Congress. Congress did, however, in defining the Act's general scope, include activities considered "necessary" to the production of goods for commerce.

The term "necessary" led some courts to find activities covered which Congress had not intended to cover, and in 1949 the word "necessary" was eliminated from the Act. In its place was inserted the "directly essential" test asserted by plaintiff to be applicable to the present case.

In addition, Congress undertook to clarify the retail and service establishment exemption, since some of the activities held to be "necessary" and covered by the Act were in the category it thought to be entitled to the retail exemption. This clarification has persisted without change to the present, so that a retail or service establishment is defined by the statute as one which makes sales or provides services recognized as retail in the particular industry and seventy-five percent of whose annual dollar volume of sales or services is not for resale. If more than fifty percent of such a retail or service establishment's annual dollar volume is made within the state in which it was located, it qualifies for the exemption.

The Act was again amended in 1961, and the scope of the retail exemption was restricted by making the Act applicable to those retail establishments which were part of an enterprise of a certain size. 29 U.S.C.A. § 203(s) (1964). Specific provisions, however, continued the retail exemption for restaurants and food service employees in other retail establishments and exempted any establishment within a covered enterprise, provided that the establishment's annual dollar volume of sales was less than $250,000. *Id.* § 213(a) (2) (ii), (iv), (20) (1964); 2 U.S.Code Cong. & Ad.News, p. 1647 (87th Cong. 1st Sess. 1961).

The most recent amendments eliminated both the specific exemptions referred to above. Whether a retail exemption is now available to restaurants and other food service employees depends upon whether more than fifty percent of the retail establishment's annual dollar volume of sales is within the state where the establishment is located and (1) the establishment is not part of an enterprise with a volume of gross annual business of $500,000. or more, or (2) the establishment is part of such an enterprise but has an annual dollar volume of sales of less than $250,000. 29 U.S.C.A. §§ 203(s), 213(a) (2) (1964), as amended, 29 U.S.C.A. §§ 203(s), 213(a) (2) (1967).

The 1949 amendment defining a retail and service establishment thus remains unchanged. Any establishment which met its tests in 1949 is still a retail establishment and, provided that it met the other conditions of the 1961 amendment and can meet those of the 1966 amendments, it is entitled to the exemption.

▮ It is not disputed that defendant's White Sands' establishment made no sales for resale. Neither is it disputed that more than fifty percent of its sales were within New Mexico. Nor is it an issue that its sales were of the kind normally recognized as retail in the food service industry. A cafeteria clear-

ly is a restaurant, and, as for the monetary condition imposed by the 1966 amendment, defendant's White Sands operation never approached the $250,-000. figure. The "directly essential" test and the retail exemption are mutually exclusive, and if it is not covered by the "directly essential" test, the retail exemption is available to it.

The defendant relies upon what the legislative history shows to be the intent of Congress to overrule the case of McComb v. Factory Stores Co. of Cleveland, 81 F.Supp. 403 (D.Ohio 1948), remanded 179 F.2d 238 (6th Cir. 1949). The legislative history indicates that the Congressional response to the Factory Stores case was the deliberate substitution of the restrictive "directly essential" test for the broad "necessary" test, so as to eliminate from coverage the kind of employees involved in the Factory Stores cafeteria operations and to specifically include within the definition of "retail" the kind of food service establishment therein conducted. 2 U. S.Code Cong.Serv., pp. 2252–2253, 2264 (81st Cong. 1st Sess. 149); see 29 C. F.R. §§ 779.389, .318 (1967).

The defendant in the Factory Stores case operated a cafeteria and canteens under a contract with Republic Steel Corporation on its premises at Cleveland, Ohio. Its cafeteria was open for morning and luncheon service. The plant itself was enclosed by fences, and a company rule prohibited workers from leaving the premises during their working shift. Lunch periods were extremely brief, ranging from fifteen to twenty minutes generally. The plant was located in an industrial section of the city, so that there was insufficient time to travel to the locations where restaurants could be found. The need for in-plant food service to replace or supplement lunch boxes was emphasized, as was the concern of Republic officials with the type of service given and food served by the defendant.

The district court held the cafeteria and canteen employees of the defendant Factory Stores Co. to be engaged in an occupation "necessary for the production of goods" for interstate commerce. McComb v. Factory Stores Co. of Cleveland, supra at 408.

The 1949 amendments caused a remand of the case on appeal. McComb v. Factory Stores Co. of Cleveland, supra.

The facts in the present case bear a striking similarity to those of the Factory Stores case. The need for food service is equally strong in both cases. Although the N.A.S.A. installation was some distance from town while Republic Steel was located in town, the operational situations in both cases were such that the only alternative to food service on site or in plant was for the employees to bring their own food. Republic forbade its employees to leave the plant during a shift, while distance and security measures made leaving the N.A.S.A. site impractical.

As in the Factory Stores case, none of the people who frequented defendant's White Sands cafeteria lived at the site. The employees lived in Las Cruces and commuted to White Sands daily. Many of them brought luncheon food with them. Indeed, the lack of volume in defendant's cafeteria indicates that this must have been a common practice.

There is no factual distinction between the conditions under which the Republic cafeteria operated and the conditions under which defendant operated its cafeteria in the present case. If it was the intent of Congress to exclude the Republic cafeteria under the "directly essential" test, then defendant's White Sands operation was also excluded. That this was Congress' intent is clear. 2 U.S.Code Cong.Serv., supra.

The Court is not unmindful of those cases which hold that food services somewhat like defendant's are covered by the "directly essential" test. Mitchell v. Anderson, 235 F.2d 638 (9th Cir. 1955), cert. denied 352 U.S. 926, 77 S. Ct. 223, 1 L.Ed.2d 161 (1956); Hanson v. Lagerstrom, 133 F.2d 120 (8th Cir. 1943); Consolidated Timber Co. v.

Womack, 132 F.2d 101 (9th Cir. 1942). *Hanson* and *Womack* antedated the 1949 amendments. As for *Anderson*, if the majority's interpretation of the 1949 amendments is correct, that case is nevertheless distinguishable on its facts from the present case. There is no living accommodations problem here, as there was in *Anderson*, nor is there any suggestion in the present case that it would be difficult to get employees without the food service. In *Anderson*, the food and lodging services performed by the contractor were essential to house and feed single employees at the mine. Without them, the difficulty of getting and keeping sufficient employees for mine operations would have been considerably enhanced. In the present case, all of the employees live in and can bring their own food from Las Cruces.

It is the Court's conclusion that the 1949 amendments to the Fair Labor Standards Act were intended to exclude from coverage under the "directly essential" test the kind of activities performed by the defendant's food service employees at its White Sands cafeteria. This is not a policy matter for the Court. Congress deliberately changed the law so as to exclude the type of operation presented in the present case, and thus it must be found that the activities of defendant's employees at White Sands did not constitute a process or occupation directly related or essential to the production of goods for interstate commerce.

That Congress intended to include operations like the present one within the definition of a retail or service establishment is also clear from the 1949 legislative history, *supra*. This is buttressed by the 1961 amendments to § 213(a) (2) and (a) (20), which granted specific exemptions to restaurants and food service employees. 29 U.S.C.A. § 213(a) (2), (20) (1964); see 29 C.F.R. §§ 779.318, .389 (1967). While the 1966 amendments eliminated these two specific exemptions, it cannot be said that Congress intended thereby to extend the Act's coverage to all otherwise eligible restaurants and food service employees, for the 1966 amendments retained the retail exemption and the dollar volume requirement for all small and/or marginal retail establishments. 29 U.S.C.A. § 213(a) (2) (1964), as amended 29 U.S.C.A. § 213(a) (2) (1967); see 2 U.S. Code Cong. & Ad.News, p. 3013 (89th Cong.2d Sess.1966).

A retail or service establishment may be characterized as one which sells goods or services in small quantities to the general public and which is at the very end of the stream of distribution. 29 C.F.R., *supra*, §§ 779.318–779.320. The plaintiff contends that defendant's operation did not qualify because it was not open to the general public, although it otherwise fit the characterization. That the kind of sales made in the present case normally are retail is clear, so the question is whether the circumstances under which this defendant sold food are such that, even though recognized as retail sales in the particular industry, they preclude a finding that its sales were retail. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L. Ed.2d 694 (1966).

The evidence in the case shows that defendant imposed no restrictions upon whom it would serve. Anyone who came to the missile site could eat at its cafeteria. Indeed, such a customer need not even be someone employed at the site. No different price was charged guests than was charged employees. The same kind of food was served to all. The sales made were retail sales to the ultimate consumer within the meaning of the Act and the Regulations, *supra*.

It is the conclusion of the Court that Congress intended the Act to exempt defendant's operation under § 213(a) (2) as a retail and service establishment and that, because defendant's operation met the dollar volume requirement of the 1966 amendment, the defendant remained exempt during the period from February 1, 1967, to June 30, 1967.

This Memorandum Opinion will be filed as the Court's Findings of Fact and Conclusions of Law.