**Peter J. BRENNAN, Secretary of Labor,**

v.

**James J. CLARK and Patrick Clark.**

**Civ. A. No. 74–0256–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 12, 1975.

---

William B. Cummings, U. S. Atty., Richmond, Va., Alan J. Davis, Dept. of Labor, Philadelphia, Pa., for plaintiff.

William H. Willcox, Marshall F. Berman, Gall, Lane & Powell, Washington, D. C., Charles Witthoefft, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This cause of action is before the Court for determination on the merits. The parties waive the right to call witnesses or present oral testimony and agree to a decision on the record, that is on the pleadings, stipulations of fact, discovery and exhibits.

Plaintiff Secretary of Labor is proceeding under the Fair Labor Standards Act of 1938, *as amended,* 29 U.S.C. § 201 *et seq.* [hereinafter the Act]. Defendants Mr. and Mrs. James J. Clark, as co-owners of a restaurant establishment, are accused of violating the Act's minimum wage, overtime wage, work records and child labor requirements. Id. Jurisdiction is invoked pursuant to 29 U.S.C. § 217, and defendants concede properly so (Stipulation Plaintiff 2).

Defendants admit that if they come under the provisions of the Act they would be guilty of the violations alleged, except perhaps the child labor charge. (Stipulations 43–45). Hence both parties agree the real issue is whether defendant's business is subject to the Act's provisions. Pertinent to this query, the following facts have been stipulated by the parties.

On 26 September 1973 defendants leased from Parker Oil Company [hereinafter Parker] a restaurant known as "Simmons Truck Terminal Restaurant" located in a building and on property owned by Parker. The property has 150 yards of road frontage on U.S. Highway 360, not a primary tourist road, near Keysville, Virginia, a town of about 3,000 persons. The restaurant occupies the North eighty percent of the building; a Union 76 truck stop, owned and operated by Parker occupies the remaining twenty percent. Each establishment has its own front entrance but a door inside the building connects the two for customer use.

Parker's truck stop is not a "full service" truck stop as the term is known in the industry. It is limited to sales of diesel fuel and gasoline, the repair of truck tires and minor sales of oil, flashlight batteries and soft drinks from vending machines. At all times material to this action the truck stop's annual gross volume of business has been in excess of $250,000, the majority of customers consisting of truckers. It is open for business every day around the clock, manned by approximately ten employees who work on a two shift basis.

The restaurant employs approximately 16 persons. It is also open continuously but operates on a three shift basis.

There is no interchange of employees or common supervision between the truck stop and the restaurant. Defendants maintain their own business books, records, and bank accounts wholly apart from Parker's business. The only business connection between defendants and Parker, outside the lease itself, is an informal agreement that the employees of each establishment are entitled to a slight discount on purchases made from the other's business.

The majority of the restaurant customers has consisted of truckers. When defendants first began operations on 1 October 1973 some 80% to 90% of their customers were truckers. Since 1 January 1974 sales to customers other than truckers have increased to where they now comprise some 35% to 40% of defendants' customers. The annual dollar volume of business from all customers has never reached $250,000. Broken down on a daily average, sales are approximately ⅓ higher on weekends.

Defendants heavily rely upon word of mouth advertising, both among truckers and the Keysville area general public. They also have advertised by maintaining two billboards on Highway 360, a sign in the centerfield at Keysville, Virginia, ballpark,[1] an ad in the county sheriff's calendar, and a running ad in the local high school basketball game programs.

Defendants, upon taking over the restaurant, initiated an open seating policy as opposed to having seats reserved for truckers. Defendants' employees, as part of their regular duties handle, sell or otherwise work on foods, goods or supplies that have moved in interstate commerce from points outside Virginia.

The parties are also in agreement as to many of the laws relevant to the facts herein. A truck stop, such as Parker's, with a gross annual business exceeding $250,000 comes under all the provisions of the Act. 29 C.F.R. § 779.317; see, e.g., Hodgson v. J. W. Lyles, Inc., 335 F. Supp. 128 (D.Md.1971), aff'd, 468 F.2d 625 (4th Cir.1972). A service establishment, such as a restaurant, grossing less than $250,000 is entitled to exemption from the Act's minimum wage and overtime wage regulations. 29 U.S.C. § 213(a)(2). An exempt establishment also does not have to keep records otherwise required by 29 U.S.C. § 211(c). See, e.g., General Tobacco and Grocery Co. v. Fleming, 125 F.2d 596 (6th Cir.1942).

Thus, if defendant's restaurant is found to fit into the category of establishments that qualify for the section 213(a)(2) .exemptions then, at most, it could only be subject to liability for the child labor violation which the Court here and now finds to be de minimus and moot.

The Wage-Hour Administrator has ruled that food service facilities which are part of a truck stop do not qualify for the exemptions. Wage-Hour Administrator's Opinion Letters of June 6, 1968; July 18, 1969; December 7, 1972. However, he has further ruled that a restaurant, even though located on the same property or in the same building as a truck stop, may nevertheless be found to be a "separate establishment" entitled to the aforementioned exemptions. 29 C.F.R. § 779.305. So the dispositive question is whether defendants' restaurant is a part of the truck stop or a "separate establishment."

With regard to this question the Administrator promulgated a series of opinion letters in 1968 establishing that a restaurant located at a truck stop may be regarded as a separate establishment if it meets the test set out in 29 C.F.R. § 779.305, which regulation was originally designed to define when a leased department in a department store is to be regarded as a separate establishment. The requirements are: 1) physical separation; 2) functional separation; 3) separation of work forces; and 4) separate books and records.

In response to the need for clearer guidelines expressed by the truck stop industry, the above position was reiterated and clarified in an Opinion Letter of 7 December 1972 on "Truck Stop Food Service" and in the Labor Department Field Operations Handbook of which portion relating to truck stop restaurants was revised at that time.

Section 21ct03(c) of the revised Field Operations Handbook explains the criteria by which the Administrator determines whether the "functional separation" requirement is met:

The "functionally separated" test is generally met if sales to the public are substantial and it can be demonstrated that the facility actively encourages public patronage (Items (1), (2), (3) and (5) below). However, this test is clearly met without further analysis if more than 50% of the annual dollar volume of food sales of the food service facility is derived from sales to the general consuming public. The separate records and bookkeeping requirement must be met in either case.
. . . .

---

1. This particular method of advertising was discontinued for the 1975 Little League season.

(1) Does the facility actively encourage public patronage by newspaper ads, highway signs and similar means such as providing lunches for business clubs, offering featured menus for families, special days and the like? Or does the facility discourage patronage by the general public?

(2) Are there tables or portions of the facility restricted to truck drivers by design or by custom or can anyone sit anywhere? If there are restrictions, what percentage is for truck drivers and what percentage is for the general public?

(3) What is the proportion of passenger cars in the parking lot as opposed to trucks?

(4) Is the facility run by a firm engaged in the business of operating food service facilities similar to *Factory Stores* or is it run by the same party that operates the gasoline station, etc.?

(5) Do sales rise sharply in the summer vacation months when families are on the road?

While none of these single factors is controlling in every case, each is indicative and should be considered.

■ This Court is inclined to believe that the Administrator's position outlined above incorrectly narrows the Section 213(a)(2) exemptions in derogation of congressional intent as interpreted by the courts. *Cf., Hodgson v. Prophet Co.,* 472 F.2d 196 (10th Cir.1973); *Hodgson v. Crotty Brothers Dallas Inc.,* 450 F.2d 1268 (5th Cir.1971). But we need not go this far here for the parties have stipulated that if defendants have complied with the Administrator's guidelines then they are exempt from the provisions in question. We find that they have complied therewith. Defendants' restaurant is a "separate establishment" as described in the Administrator's regulations, opinion letters and field manual.

First, defendants' restaurant satisfies the "physical separation" test. The Administrator's position long has been that "some physical separation" of activities is all that is necessary. W & H Release No. R584, January 24, 1940, reported at CCH, LLR, W&H par. 25,220.162. The facts show that defendants run their own restaurant with their own employees and in their own leased part of the building. Further, 29 C.F.R. 779.305 provides that a "separate establishment" may be under the same roof of that of another establishment. Defendants' restaurant occupies its own distinct and separate space in the building, has its own entrance and otherwise meets the test of physical separation. *See e.g., Mitchell v. Sunshine Department Stores, Inc.,* 292 F.2d 645 (5th Cir.1951); *Wessling v. Carroll Gas Co.,* 266 F.Supp. 795 (N.D.Iowa 1967).

As to the separate work force and separate books and records requirements, it has been stipulated that defendants comply therewith.

■ With regard to the remaining requirement, that the restaurant and truck stop be "functionally separate," we acknowledge that such is met "without further analysis" if more than 50% of the restaurant sales are to the "general consuming public." The parties have stipulated that 35% to 40% of the restaurant's business comes from nontruckers. Further, they have stipulated that one half of those customers of the restaurant who are truckers stop solely for the purpose of eating at the restaurant; they do not patronize the truck stop facility. This Court opines that these truckers constitute part of the "general consuming public" described in Section 21ct03(3) of the field operations handbook. See, *Hodgson v. Prophet Co., supra; Wirtz v. Pickett Food Service Inc.,* 304 F.Supp. 784 (D.N.M.1968). Adding such trucker-customers to the percentage of non-trucker-customers, the total is well over 50%, thus satisfying the functional separation of C.F.R. § 779.305. The other Section 779.305 requirements having been met, defendants' restaurant qualifies as a separate establishment exempt from the provisions of the Act in question.

This Court also finds that, even if the 50% requirement had not been met, defendants' restaurant would still have passed the functionally separate test. If the 50% test cannot be satisfied a restaurant may still be considered functionally separate if sales to the public are substantial and it actively encourages public patronage. As mentioned, the considerations for determining compliance with this requirement are whether or not: 1) advertisements aimed at the general public are used; 2) all tables are available to the general public; 3) there is a reasonable proportion of passenger cars in the parking lot; 4) different parties own the truck stop and restaurant; and 5) sales rise sharply in the summer months.

As to the advertisements, the facts suggest nothing to dissuade this Court from concluding that they were aimed at the general public. Most of the advertising was word of mouth, surely the best means of local advertisement. In addition, defendants made use of the limited means of advertising to which they had access in the community, there being no local newspaper or radio station.

With regard to seating arrangements, defendants have vigilantly pursued an open seating policy, even to the extreme of discharging a waitress who violated their policy. The parking lot count is not relevant to this inquiry. The ownership and operation of the restaurant business is totally independent and distinct from that of the truck stop.

Although sales did not rise sharply in the summer months, but declined, this is independently explainable by the fact that the restaurant is located in a non-tourist area. Sales do, however, rise sharply on the weekends when, one reasonably can infer, more non-commercial and local traffic is on the road. This rise is equivalent to the summer months rise.

For these and the foregoing reasons this Court finds that defendants' restaurant is an independent establishment under 29 C.F.R. § 779.305 fully entitled to the exemptions set out in 29 U.S.C. § 213(a)(2). Therefore, this Court finds for defendants on the merits.

An appropriate order shall issue.